548 So.2d 501 (1988)
Samuel C. WILLIAMS
v.
STATE.
3 Div. 310.
Court of Criminal Appeals of Alabama.
February 18, 1988.
On Return to Remand December 30, 1988.
Rehearing Denied May 12, 1989.
Certiorari Denied July 14, 1989.
*503 Maurice S. Bell and David G. Flack, Montgomery, for appellant.
Don Siegelman, Atty. Gen., and Cecil G. Brendle, Jr., Asst. Atty. Gen., for appellee.
Alabama Supreme Court 88-1075.
PATTERSON, Judge.
Appellant, Samuel C. Williams, was convicted on May 27, 1985, of the offense of selling cocaine, a controlled substance, in violation of § 20-2-70, Code of Alabama 1975.[1] He was sentenced to 15 years' imprisonment and fined $15,000.00. The sentence was ordered to run concurrently with a previous 25-year sentence, which he had received as a result of having been convicted on May 1, 1985, for trafficking in cocaine. Appellant raises a number of issues.
One of the issues raised on appeal pertains to the use of peremptory strikes by the state to remove blacks from the jury venire. Appellant contends that the trial court committed reversible error in overruling his objection to the state's striking of blacks, arguing that the strikes were exercised in a racially discriminatory manner, depriving him of his constitutional rights. He relies on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Jackson, 516 So.2d 768 (Ala.1986).
The record shows that initially there were 46 names on the venire and that 5 whites and 5 blacks were either excused or challenged for cause, leaving 36 on the panel. Thus, each side had 12 strikes. There were 9 blacks remaining on the panel of 36. The state exercised its 12 strikes by striking 3 whites and all 9 blacks. Appellant's objection to the state's strikes was timely, and made after the jury had been selected but before it was sworn. The prosecutor's explanations of its striking of blacks did not meet the requirements of Batson or Ex parte Branch, 526 So.2d 609 (Ala.1987) (as modified on denial of rehearing, December 4, 1987). The trial court overruled appellant's objection.
Accordingly, this cause is remanded with directions for the trial court to conduct proceedings consistent with Batson and the guidelines adopted by the Alabama Supreme Court in Ex parte Branch. The court is also directed to file findings of fact and conclusions of law with this court.
We deem it unnecessary to address the other issues raised by appellant at this time.
REMANDED WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
PATTERSON, Judge.
We remanded this case to the trial court with instructions to conduct proceedings consistent with Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala.1987), and to file findings of fact and conclusions of law with this court. Pursuant to our instructions, the trial court conducted *504 an evidentiary hearing "following the procedures set forth in Ex parte Branch," and filed an "order" with us detailing its findings and conclusions. No transcript of the evidentiary hearing has been filed; however, the findings and conclusions of the trial court are sufficient for our review and resolution of this case. The order will be treated as a return to our remand.
During the jury selection in the instant case, the prosecutor used nine of her twelve peremptory challenges to exclude all black prospective jurors. The central question to be decided here is whether the prosecutor made a bona fide or legitimate showing that her use of the peremptory strikes was for reasons other than race.
The order of the trial court set out the prosecutor's explanations for each of her peremptory strikes of blacks and concluded with a finding that the state had met its burden in "articulating a clear, specific, and legitimate reason for each challenge which relates to the particular case to be tried, and which is non-discriminatory." The trial court stated in its order that it "reads" our original opinion "to hold that the defense had already met its initial burden of persuasion to establish a prima facie case of discrimination."[1] The trial record discloses that the trial court did not expressly rule that appellant had established a prima facie case of discrimination; nevertheless, the court required the prosecutor to explain her peremptory strikes. After hearing the explanations, the trial court overruled appellant's motion to quash the jury panel on the ground that the state's strikes were racially discriminatory. We follow the rule that, when the prosecution's explanations for its strikes are of record, we will review the trial court's findings of discrimination vel non, even though there has been no express finding by the trial court that a prima facie case has been established. Currin v. State, 535 So.2d 221 (Ala.Cr.App.1988). See also United States v. Forbes, 816 F.2d 1006 (5th Cir.1987). In other words, when the trial court calls upon the prosecutor for an explanation, without expressly finding a prima facie case, we will proceed directly to evaluate the sufficiency of the ensuing explanation. Where the trial court requires the prosecution to explain its peremptory challenges without first finding the existence of a prima facie showing of discrimination, we may fairly conclude that "the enquiry implied such a finding, and shifted the burden of justification to the prosecutor." People v. Turner, 42 Cal.3d 711, 719, 230 Cal.Rptr. 656, 660, 726 P.2d 102, 106 (1986).
In the instant case, the prosecutor had the burden of articulating clear, specific, and legitimate reasons for the strikes, which relate to the case, and which are non-discriminatory. Batson, 476 U.S. at 97, 106 S.Ct. at 1723; Ex parte Branch, 526 So.2d at 623. When evaluating the reasons, the trial court had a duty to reject any explanation that did not meet these requirements. Owens v. State, 531 So.2d 22 (Ala.Cr.App.1987); Slappy v. State, 503 So.2d 350 (Fla.Dist.Ct.App.1987), cert. denied, ___ U.S. ___, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988). In reviewing the trial court's finding that the strikes were non-discriminatory, we can only reverse if we find that that determination was clearly erroneous. Floyd v. State, 539 So.2d 357 (Ala.Cr.App.1987) (on return to remand); Owens v. State. For guidance in applying this "clearly erroneous" standard of review, see Owens v. State, 531 So.2d at 23-24.
The trial court, in its order, set out the following reasons for the state's peremptory strikes of blacks:
"Juror # 81, Mrs. Tammie Hardwick, a black female was the state's first strike. Mrs. Hardwick was struck because her husband is a prominent and *505 active defense attorney in Montgomery who had recently appeared as the defendant's attorney of record against the prosecutor, Miss Ellen Brooks, in a very controversial trial.
"Juror # 55, Mrs. Dorothy Allen, a black female was the state's second peremptory strike. Mrs. Allen had stated in the voir dire that she had `heard of Mr. Williams,' the defendant. The state feared that if a particular juror had heard that the defendant had previously received a mistrial in this case, the juror might assume lack of evidence on the state's part even though the mistrial was due to the sickness of a juror. Further, she lived in a `high crime' area of the community. These two factors led the prosecution to the conclusion that this juror might be prejudiced because she knew of the defendant or possible intimidation because of the area in which she lived.
"Juror # 9, Ms. Marilyn Benson, a black female was the state's third strike. The primary factor was Ms. Benson's youth. Because of her age, 25 years old, and the prevalence of drug use among the youth, the state felt that she might be more defense-oriented in a drug prosecution such as the defendant's in this case. Additionally, [she] was employed as a college counselor causing the state to assume she might respond less favorably to the punitive nature of this prosecution. Ms. Benson, also, responded that she had `heard of Mr. Williams.' This could present a problem if she had heard of the mistrial in the previous attempt at trying Mr. Williams and assumed it was due to a defect in the state's case. Finally, she stated that she was connected in some way with a mental health agency, causing the state to question whether this juror would be receptive to the punitive measures that would be dictated by state law if the prosecution prevailed.
"Juror # 13, Mr. James Glover, a black male, was the state's fourth strike. The primary reason Mr. Glover was struck was because of his inability to read and write. The state felt that this was particularly important in this case because a crucial piece of evidence was the written transcript of a tape recording of the drug sale Mr. Williams was charged with.
"Juror # 10, Mr. John L. Brown, a black male, was the state's fifth strike. Mr. Brown had received several traffic violations causing the state to fear he may not be receptive to the testimony of police officers who were key witnesses in this case. Additionally, Mr. Brown was a teacher/counselor at Patterson Trade School causing the state to have questions as to whether he disapproved of the punitive aspects of criminal prosecution.
"Juror # 17, Mrs. Carolyn Brown Simmons, a black female, was the state's sixth strike. Mrs. Simmons worked in the public school system causing the state to question whether the juror would be in favor of the punitive aspects of criminal prosecution (from the witness stand she related that she was a lunchroom workerinformation the state may or may not have had at the time of striking). Secondly, Mrs. Simmons had indicated that at some point in voir dire that she had heard of the defendant. Again, the risk that the juror had heard of the previous mistrial and therefore assumed that the state had had a weak case was not one the state was willing to take. Additionally, Miss Brooks, the prosecuting attorney, observed during voir dire that Mrs. Simmons appeared to be docile during the voir dire questioning, lacking the strength of conviction it would take to sit in judgment in a case of this magnitude.
"Juror # 41, Mrs. Era Arrington, a black female, was the state's seventh strike. Mrs. Arrington had heard about the case creating the same fears as in related jurorsthat they had heard of the mistrial and would assume the state had put together a poor case. Also, Mrs. Arrington, a teacher for the Montgomery County Board of Education, was stricken because the state questioned whether this juror would be receptive to the punitive nature of the criminal justice system. Finally, the prosecutor had noted *506 that this juror had had some connection, possibly negative, with `law enforcement' therefore perhaps causing a problem when the key witnesses, police officers, testified.
"Juror # 77, Mrs. Ethel Rogers, a black female was the state's eighth strike. The primary consideration was the advanced age of Mrs. Rogers. Since Mrs. Rogers was eighty years old, the state was concerned about her ability to be physically present and her ability to hear, be awake during the trial, and meaningfully participate in the deliberations. This possibility was exacerbated by the necessity of a sequestered jury in a capital case [sic].
"Juror # 53, Mr. Charles Gibbs, a black male, was the state's eleventh strike. Both Mr. Gibbs and his wife were employed by the board of education in another county. Again, the state questioned whether this juror would be receptive to the punitive measures that would be dictated by state law if the prosecution prevailed. Also, some hesitance in allowing this juror to remain on the panel was due to the fact that this juror worked out of the county and the jury was to be sequestered."
After considering the reasons given for the strikes, we conclude that sufficient race neutral reasons were given for striking venirepersons number 81 and number 13; however, we have grave doubts about the others, particularly when they are considered together or in their totality, for we believe that the state made unwarranted assumptions in reference to the remaining black venirepersons.
Venireperson number 55 had "heard" of appellant, but in the absence of voir dire questioning, we do not know what she had heard or under what circumstances she had heard it. The speculation that her having heard of appellant might prejudice her against the prosecution is just thatsheer speculation. The assumption that she may have heard of a previous mistrial and, therefore, assume that the state had a weak case was also pure speculation. A few simple questions addressed to this venireperson on voir dire would have cleared up any doubt concerning the matter, but they were not asked. Moreover, the bare fact that she lived in a high crime area does not warrant the assumption that she would be less interested in law enforcement or would be intimidated by appellant.
The state's reasons for striking venireperson number 9 also amount to pure speculation and are unsupported by voir dire examination. If she was inclined, because of her age, to favor defendants in drug prosecutions, this inclination could have been developed by questions on voir dire. An assumption that all college counselors or persons connected with mental health agencies or organizations are less interested in punishing people for drug violations, in our view, is implausible. Again, the venireperson's response that she had heard of appellant, without more, offered no clear, specific, and legitimate reason for striking her.
In the case of venireperson number 10, the fact that he had several traffic violations might be a valid reason for striking him, depending upon the circumstances of the particular case; however, it does not automatically follow that he might be less receptive to the testimony of police officers. This explanation is weakened, in our opinion, by an additional reason given by the prosecutor, which we consider to fail the "clear, specific, and legitimate" criteria. The prosecutor assumes that, because this venireperson is a teacher or counselor at Patterson Trade School, he might disapprove of "the punitive aspects of criminal prosecution." In the absence of some evidence or voir dire testimony to support this assumption, we cannot agree with the prosecutor.
In striking venireperson number 17, the prosecution utilized some of the same reasons for striking venirepersons number 55, number 9, and number 10, discussed above. The assumption that she is opposed to punishing people for the commission of crime simply because she worked for a public school is, as already noted, implausible. The assumption that, because she had heard of appellant, she *507 might know of a previous mistrial and think the state's case was weak, is sheer conjecture. Again, a few questions on voir dire would have removed any doubt. The prosecutor's reasoning that she was "docile" during voir dire questioning and was "lacking the strength of conviction it would take to sit in judgment in a case of this magnitude" is also doubtful. The fact that she was "docile" might pass muster under some circumstances; but, when considered along with the other reasons given in the instant case, it is highly suspect.
Two of the reasons given for striking venireperson number 41, that she was a school teacher and had heard about the case, have been discussed and rejected. The additional reasonthat she had "some connection, possibly negative, with `law enforcement,' therefore, perhaps causing a problem when the key witnesses, police officers, testified"also appears to be nothing more than speculation and is unsupported by voir dire examination.
We have less difficulty with the reason for striking venireperson number 77, that she was 80 years of age. However, we have grave doubt as to whether it is race-neutral, especially when it is considered in the context of the circumstances and the other explanations. She obviously had been selected for jury service and was willing to serve; otherwise, her name would not have been on the venire list. The prosecutor's assumption that she would have difficulty hearing and staying awake during the trial or would find sequestration difficult is not supported by voir dire examination. Moreover, these considerations did not need to be based on any speculation, for obviously the prosecutor had the opportunity to observe this venireperson and, thus, knew whether she could hear the questioning, stay awake, and "meaningfully participate." We further note the prosecutor's curious reference to this case as being a capital case, for this was a drug prosecution.
We have already rejected the first reason given for striking venireperson number 53, as not being based on any fact. The other reason giventhat, due to the venireperson's working in another county, some difficulty might arise because of the sequestration of the juryis also unsupported by any voir dire examination and is, in our opinion, implausible.
After considering, individually and collectively, the reasons advanced by the state for its peremptory strikes of blacks, as well as all other relevant circumstances surrounding the selection of the jury in this case, we find that the trial court's ruling that the prosecutor articulated race-neutral explanations for her strikes of venirepersons 55, 9, 17, 41, and 53 are clearly erroneous. As to venirepersons 10 and 77, we express doubts.
The striking of one venireperson for a racial reason violates the Equal Protection Clause, even when valid reasons for striking some black jurors are shown. United States v. David, 803 F.2d 1567 (11th Cir.1986); Acres v. State, 548 So.2d 459 (Ala.Cr.App.1987); Owens v. State. The explanations given for the striking of venirepersons 55, 9, 17, 41, and 53 were not supported by any voir dire examinations by the prosecution and, in our opinion, are not specific, bona fide, or legitimate. The explanation given for some of the strikes was based on an assumed employment group bias, which was not shown to apply factually to any venireperson specifically or to the facts of the particular case. No explanation was offered to explain why a school teacher, a college counselor, a school lunchroom worker, or a person connected with a mental health organization would be against, rather than in favor of, the prosecution. It could be just as plausibly argued, in a narcotics case, that such persons would more likely sympathize with the prosecution. That these persons were challenged without being examined on voir dire in reference to any possible bias they might have because of their employment or position in society raises a strong inference that they were excluded on the basis of race alone. A like rationale supports our rejection of age-based bias and residence-based bias under the facts here. In addition, the repeated reason that the venireperson might know that the previous trial *508 had resulted in a mistrial and, thus, might think that the prosecution was faulty, just because he or she had heard of the appellant, is supposition multiplied and grossly far-fetched. We conclude that the prosecutor's explanations for striking these venirepersons are constitutionally insufficient. Appellant is entitled to a new trial.
We find it unnecessary to address the other issues raised on this appeal, as they either have no merit or are unlikely to arise in a new trial.
The conviction is reversed and the case is remanded for a new trial.
OPINION EXTENDED; REVERSED AND REMANDED WITH INSTRUCTIONS.

ON REHEARING
PATTERSON, Judge.
Appellee, State of Alabama, has filed an application for rehearing and a motion pursuant to A.R.A.P. 39(k) in this case, contending that we erred in reversing and remanding the case for a new trial due to the discriminatory striking of black persons from the jury venire, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Jackson, 516 So.2d 768 (Ala.1986). In its application, the state took issue with our acceptance of the trial judge's order, which included findings of fact and conclusions of law, as a return to remand, and with our basing our decision to reverse on the order instead of requiring a complete record of the Batson proceedings below and reviewing it before rendering our decision. Appellee states that it was not informed of the trial court's order prior to our decision and was therefore deprived of an opportunity to address the issues raised in the return to remand. Appellee also states that a review of the record was necessary to determine if discrepancies existed between the order and the transcript of the Batson hearing. Appellee further contended that the transcript contained voir dire examination which would disclose race-neutral reasons for the state's black strikes.
In order to give appellee an opportunity to view the record of the proceedings in the lower court, compare the trial court's order and findings with the record, and file a brief with us, we delayed considering the state's application for rehearing and ordered the preparation and filing of the complete record of the Batson hearing. The complete record was filed with us on March 13, 1989, and the appellee's brief was filed on April 3, 1989.
We have now reviewed the record of the Batson proceedings, and considered the application for rehearing and brief in support thereof, and conclude that the application is due to be overruled. We adhere to and reaffirm our decision of December 30, 1988, reversing and remanding this case. Our review of the record strengthens our belief that the prosecutor's explanations for striking the black venirepersons listed in our previous opinion are constitutionally insufficient, and the trial court's order holding that they were sufficient is clearly erroneous. The record fails to disclose voir dire examinations supportive of the appellee's position. The voir dire was desultory, and fell far short of suggested examination of prospective jurors in cases of this kind by our supreme court in Ex parte Branch, 526 So.2d 609 (Ala.1987). Appellee points out that the trial court conducted the voir dire examination of the jurors and implies that the prosecutor was thereby limited in her inquiry. Regardless of the reason for the lack of meaningful voir dire examination, the fact of the matter is that it was not undertaken and its absence here must be weighed against the state's position. We reiterate that the fact that the black jurors who were challenged without being examined on voir dire in reference to possible bias because of their employment, position in society, age, and residence raises a strong inference that they were excluded on the basis of race alone. The state simply failed to meet its burden in overcoming the presumption that the strikes were racially discriminatory. The application for rehearing is due to be, and it is hereby, overruled. The A.R.A.P. 39(k) motion is denied.
*509 OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED; MOTION DENIED.
All Judges concur.
NOTES
[1] This was the second trial of this case. The jury was unable to reach a verdict in the first trial, and the trial court ordered a mistrial.
[1] We note that this determination is, in the first instance, with the trial court. Although we have not previously held that the instant facts presented a prima facie case and we did not consider ourselves called upon here to address the question, we believe that the use of nine of the twelve peremptory strikes to eliminate all blacks from the venire was sufficient evidence in this case to establish a prima facie case of discriminatory strikes. See Ex parte Branch, 526 So.2d at 622-23.