Jessie James Jackson was convicted for the unlawful possession of pentazocine (Talwin) in violation of Ala. Code 1975, § 20-2-70, and sentenced to six years' imprisonment. Jackson raises two issues on this appeal from that conviction.
 I
The judgment of the circuit court is reversed for a violation of the principles of Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609
(Ala. 1987). See also Harrell v. State, 555 So.2d 263 (Ala. 1989). The record shows that the prosecutor's explanations for striking four of the six black members of the jury venire are constitutionally insufficient under the facts of this case.
Defense counsel made his Batson objection after the jury had been selected but before it was sworn. Immediately after defense counsel moved for a dismissal and for a mistrial, the prosecutor stated his reasons for the exercise of his first five peremptory strikes against blacks.
 "MR. RAMEY [Assistant District Attorney]: Judge, the first five of the nine allowed strikes by the State of Alabama were used on jury panel number 102, black female who works at the mental health department. Your Honor, as a trial prosecutor for approximately four and a half years, it's been my experience that people in mental health have difficult time as far as the State is viewing it as a jury person. In addition to that, when the Judge asked her to stand up in qualifications, give her name and her spouse's occupation, she did not stand up. She was on the front row, Your Honor recalls.
 "Number 2 strike was used on jury panel person number 95, a black male whose wife works in a doctor's office. It's been my position throughout my trial experience that people who are either nurses or work in doctors' offices that are not doctors or have spouses work in doctors' offices have a more lenient view as toward medication. And drugs in medication.
 "Number 3 strike was used on number 103, black male. He was a city worker with the City of Saraland. It's been my experience that city workers regardless of the city they're working in, sometimes hold grudges against the City. And in that, they would bring back a verdict not guilty to get back at the City. Although he's from Saraland, I think that Mobile and Saraland are so close that it's interrelated.
 "The fifth strike that was used was on number 1 — excuse me, fourth, 110, a black male that works at the state docks. It's been my policy to strike anyone that works at the state docks. For obvious reasons, that's one of the major areas where drugs come into this city. *Page 856 
 "Strike number 5, number 111, black male was stricken as is my policy to strike all truck drivers because that is another major way that drugs are brought in this city.
 "Those are the race neutral reasons for the use of those strikes. And I would ask that the record indicate that there was another black male on the jury panel which State had four extra strikes to use and chose not to strike him, him being number 104, Leroy Anderson.
 "And I would also say for the record that everyone on this panel that was either a mental health worker or had anyone that worked in a doctor's office, city worker, state dock worker, truck driver were stricken from this jury."
Without comment, the trial judge found these reasons race-neutral. With the exception of venire member 102, who was struck because of her demeanor in addition to her employment, we disagree with this finding.
The voir dire of the venire was merely nominal and consumes only eight pages of the transcript. The prosecutor did not specifically question any of the five blacks he struck and did not ask any question on voir dire relating to the explanation he gave for his strikes of any black veniremember.
The Alabama Supreme Court has stated that two of the "certain specific kinds of conduct by a prosecutor that would raise the inference of discrimination under Batson," Harrell v. State, 555 So.2d at 266, are "[t]he type and manner of the state's attorney's questions and statements during voir dire, including nothing more than desultory voir dire," and "[t]he type and manner of questions directed to the challenged juror, including a lack of questions, or a lack of meaningful questions,"Branch, 526 So.2d at 623.
In deciding a Batson issue, the importance of a thorough voir dire and the significance of its absence should not escape notice. Ex parte Cochran, 538 So.2d 793, 793-94 (Ala. 1989) (Maddox, J., dissenting) ("Because it appears that there was very limited voir dire directed to the challenged black jurors, . . . I would issue the writ of certiorari. . . ."); Ex parteLynn, 543 So.2d 709, 714 (Ala. 1988), cert. denied, Lynn v.Alabama, __________ U.S. __________, 110 S.Ct. 351,107 L.Ed.2d 338 (1989) (Maddox, J., concurring specially) ("I believe that this case only minimally complies with the requirements ofBatson, because there was very little voir dire directed to the challenged black jurors and therefore very little to indicate that they might be partial to the petitioner other than that they shared the same race. In this connection, let me say that I believe the Supreme Court, in Batson, placed particular emphasis on the value of voir dire in determining whether race-neutral reasons are present to support prosecutorial challenges.").
The opinion of this Court in Williams v. State, 548 So.2d 501
(Ala.Cr.App. 1988), dictates that the judgment of the circuit court must be reversed:
 "The explanations given for the striking of venirepersons 55, 9, 17, 41, and 53 were not supported by any voir dire examinations by the prosecution and, in our opinion, are not specific, bona fide, or legitimate. The explanation given for some of the strikes was based on an assumed employment group bias, which was not shown to apply factually to any venireperson specifically or to the facts of the particular case. No explanation was offered to explain why a school teacher, a college counselor, a school lunchroom worker, or a person connected with a mental health organization would be against, rather than in favor of, the prosecution. It could be just as plausibly argued, in a narcotics case, that such persons would more likely sympathize with the prosecution. That these persons were challenged without being examined on voir dire in reference to any possible bias they might have because of their employment or position in society raises a strong inference that they were excluded on the basis of race alone. A like rationale supports our rejection of age-based bias and residence-based bias under the facts here. . . .
". . . .
 ". . . The record fails to disclose voir dire examinations supportive of the appellee's position. The voir dire was desultory, *Page 857 
and fell far short of suggested examination of prospective jurors in cases of this kind by our supreme court in Ex parte Branch, 526 So.2d 609
(Ala. 1987). Appellee points out that the trial court conducted the voir dire examination of the jurors and implies that the prosecutor was thereby limited in her inquiry. Regardless of the reason for the lack of meaningful voir dire examination, the fact of the matter is that it was not undertaken and its absence here must be weighed against the state's position. We reiterate that the fact that the black jurors who were challenged without being examined on voir dire in reference to possible bias because of their employment, position in society, age, and residence raises a strong inference that they were excluded on the basis of race alone. The state simply failed to meet its burden in overcoming the presumption that the strikes were racially discriminatory." Williams, 548 So.2d at 507-08.
 II
Jackson also contends that the search in this case was illegal. Because this case must be reversed for the reason set out in Part I of this opinion, and because we consider the facts contained in the record insufficient, we decline to decide this issue. If the prosecution of the defendant is pursued, we caution the State to introduce sufficient evidence to bring the search clearly within the guidelines of Terry v.Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), or demonstrate that the search was pursuant to a valid and legal arrest, see Ex parte Brownlee, 535 So.2d 218 (Ala. 1988), or one of the other exceptions to the search warrant requirement. In either case, the burden is on the State.
The judgment of the circuit court is reversed, and this cause is remanded for further proceedings.
REVERSED AND REMANDED.
All Judges concur.