ON REHEARING
Our original opinion in this case, which was released on October 25, 1991, is withdrawn, and the foregoing opinion is substituted therefor.
J.C. Davis, the appellant, was indicted for first degree robbery, in violation of § 13A-8-41, Code of Alabama 1975. He was found guilty as charged in the indictment and was sentenced to life in prison without the possibility of parole as a habitual offender. The appellant raises two issues on appeal.
 I
First, the appellant contends that the trial judge erred in denying the appellant's Batson[1] motion. The record reveals that the prosecutor used 4 of his 12 strikes to strike black jurors from the jury venire and that the appellant struck three black jurors. It appears from the record that there were 15 black prospective jurors on the jury venire. After the jury was struck, the appellant made a Batson motion, asserting that the prosecutor's strikes were racially motivated. The trial court stated that it was not satisfied that the appellant had presented a prima facie case of racial discrimination, but it made the State present its reasons for the strikes.
Because the trial court had the prosecutor state his reasons for his peremptory strikes without requiring the appellant to establish a prima facie case of discrimination, we will review the reasons given by the prosecutor and the trial court's ultimate ruling on the Batson motion without any determination of whether the appellant had proved a prima facie case of discrimination. See McLeod v. State, 581 So.2d 1144
(Ala.Crim.App. 1990); Williams v. State, 548 So.2d 501
(Ala.Crim.App. 1988), cert. denied, Williams v. Alabama, 489 U.S. 1028,109 S.Ct. 1159, 103 L.Ed.2d 218 (1989).
The following portion of the record is pertinent to this issue:
 "MR. DAVIS [the prosecutor]: Ms. A., one of the State's strikes, number four.
 "Ms. A. stated that her husband knew one of the defendants. She also stated that she, it would take more than one person to identify any particular person in a situation for her to return a verdict of guilty.
 "That is the sole reason the State struck her. And, she said her husband knew the defendant. I've forgotten which one she said. I think it was Posey.
 "Ms. D also said that it would take more than one identifying witness for her to come back with a verdict of guilty. And her number was 72. She said that it would take more than one witness for her to be satisfied.
"THE COURT: You struck Ms. J, also.
 "MR. DAVIS: She was in criminal court, and she said she came back with a not guilty verdict, for the defendant. That's my recollection of — plus, she said that *Page 628 
circumstantial evidence is controlling, that there was other people that didn't believe that circumstantial evidence was not enough to satisfy them, but she said circumstantial evidence was not enough to satisfy her, plus that she had been on a jury before, and she came back with a not guilty verdict, for the defendant, is my recollection.
"And, Ms. W., I think.
"THE COURT: Ms. W., number 301.
 "MR. DAVIS: I have that she sat on a civil jury; is that correct? She never did say what the verdict — the verdict, I believe, was for the plaintiff. Verdict in favor of the plaintiff, which leaves [leads] the State to believe she may be plaintiff oriented, which is not the same thing as State defendant oriented, but I looked at it as sort of the same way.
 "She said she had trouble with circumstantial evidence. Not that. A number of other people said that they have problems with circumstantial evidence, and the State did not strike them.
 "This verdict in favor of the plaintiff, and circumstantial evidence, the fact that she's got blonde hair. I mean, not that she — there is no other black woman on that jury panel with blonde hair. If you can show me one — those are my three reasons.
 "It's been my personal experience that if somebody is not cognizant of their own reality and existence to want blonde hair, and they are a black woman, I don't want them on my jury.
 "MS. VINSON [defense counsel]: Yes, sir. Your Honor, the last reason given by Mr. Davis is totally irrelevant.
 "The fact Mr. Davis claims that she was plaintiff oriented, I think, would have been to the State's benefit, more than for the defense. Also, there were many people who were not struck that indicated that they would need more than circumstantial evidence to convict in a case, and we feel that the reasons given by him are not race-neutral.
 "There was also — I'm going to be — yes, Ms. M. was not struck, who returned a not guilty verdict in a case, also.
 "MR. DAVIS: She said a civil case. Big difference between civil and criminal.
"MS. VINSON: True.
 "I feel that those are not race-neutral reasons for those strikes.
"MR. DAVIS: May I answer that, Your Honor?
"THE COURT: Sure.
 "MR. DAVIS: If someone from the black community wanted to dye their hair and look like that — it may sound trite, but I mean, coming from the black community — and, I'm not saying that I have any more knowledge than any other particular attorney about the mental attitudes of the black community — but, if someone that wants to be blonde, and has no particular natural tendencies to be blonde, I think there's something wrong with that person. That's just my personal opinion.
 "I think for a black person to have blonde hair — I mean, there's nothing in the black heritage, unless they may be some mulatto, or freak of nature, something like that — would extend to the personality of that person with the blonde hair. But, that's just my personal opinion.
 "THE COURT: Would you have struck a white woman if she had her hair in Jheri curls?
 "MR. DAVIS: Probably. I mean, I would have put that together along with other things that she said, like I took into consideration other things that Ms. W. answered, about circumstantial evidence.
 "THE COURT: Assume she answered the same way Ms. Williams answered.
"MR. DAVIS: Yes, sir, I would have."
(R. 50-56.)
The State's reasons for striking Ms. A. are race neutral, because she testified that her husband knew the appellant's codefendant and that she would need identification from more than one witness in order to render a guilty verdict. See Heardv. State, 584 So.2d 556 (Ala.Crim.App. 1991); Watkins v.State, 551 So.2d 421 (Ala.Crim.App. 1988). Ms. D. was struck because she also testified that she would need two identifying witnesses for a guilty *Page 629 
verdict and this reason is race neutral. The prosecutor struck Ms. J. because she had sat on a jury in a criminal case that returned a not guilty verdict and because she would be unable to accept circumstantial evidence. These reasons are valid.Watkins. The State indicated that Ms. W. was struck because she had been on a civil jury that had returned a verdict for the plaintiff, because she indicated she had problems with circumstantial evidence and because she had blond hair. While the last reason given by the state is suspect, the other reasons given by the state appear to be racially neutral.
Although the record does not specifically indicate how many blacks actually served on this jury, it appears that eight blacks served on the jury (15 black potential jurors less 4 removed by the State, and 3 removed by the defendants). A large representation of blacks on the jury may weaken and even fail to support a prima facie case of racial discrimination. Exparte Bird, 594 So.2d 676 (Ala. 1991).
When reviewing a trial court's determination that the State's reasons for striking black venire members are not racially motivated, "we can only reverse if we find that that determination was clearly erroneous." Williams v. State,548 So.2d 501, 504 (Ala.Crim.App. 1988), cert. denied, Williams v.Alabama, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989).See also Ex Parte Branch, 526 So.2d 609 (Ala. 1987). We do not find that the trial judge's determination in this instance was clearly erroneous.
 II
The appellant also contends that the trial court should have granted his motion for judgment of acquittal because of "the real inconsistency in the identification of [him]." Odessa Washington testified that on April 11, 1990, two men robbed Alley's Drug Store where she was working as a cashier. About one month after the robbery, Washington viewed a lineup. At that time, she told the police officer that she thought that the appellant was the man who held the gun on her during the robbery. However, she told the officer that she was not sure and that she wanted the weekend to think about it. On Monday, Washington notified the police that she was sure that the appellant was one of the robbers. At trial, Washington identified the appellant as the man who held the gun on her for about five minutes on the night of the robbery. She said that her identification of him was based on seeing the appellant on the night of the robbery. Washington also stated that the appellant had been in the drugstore once or twice before the robbery.
Washington's in-court identification of the appellant was certainly sufficient to allow the jury to conclude that the appellant was the man who held the gun on Washington the night of the robbery.
The judgment of the trial court is affirmed.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION GRANTED.
All the Judges concur.
[1] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69
(1986).