The appellant, Donnie Louis Moore, appeals from a conviction of trafficking in cocaine, a violation of § 13A-12-231, Code ofAlabama 1975. He was sentenced to 15 years' imprisonment and was ordered to pay $50,000 to the crime victims' compensation fund.
The appellant argues that the trial court erred in denying his Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712,90 L.Ed.2d 69 (1986) motion, based on the State's peremptory strikes of juror P.B., one of two black veniremembers. *Page 771 
The record reveals the following colloquy between the trial court, the prosecutor, and defense counsel regarding theBatson motion:
 "[Defense counsel]: Judge, I make a motion to disqualify the panel on the basis of Batson v. Kentucky and its progeny.
 "And I would ask that the record reflect that, of the 35 prospective jurors, 33 were Caucasian, two were black. . . . That the panel, as a whole, was not representative of the racial makeup of the community at large.
 "I would ask to — ask that the record show that the defendant is black and charged with trafficking in cocaine. And I would ask the record to show that the State struck 50% of the black jurors, that is, one of the two, that being P.B. And on the basis of that, I would argue that we have made a prima facie showing of bias on the part of the prosecution in the jury selection.
 "THE COURT: You have not made a prima facie showing based on percentage, because you have got every juror that is available to you, you have got every juror that is available for you to strike from, there are none others available. The composition of the jury, in order to show racial bias, you would have to show some bias in the selection process. The jurors are selected in this case, in this county, by a computer out of Montgomery. We have nothing to do with the selection of this panel.
"[Defense counsel]: Yes, sir.
 "THE COURT: And you have every juror that is available at the time this jury is selected.
 "Now, on the question of the 50% striking, I do not believe that the striking of one black would be a prima facie showing, but, nevertheless, be that as it may, let me hear from the State on that point.
"[Prosecutor]: Yes, sir, Judge.
"THE COURT: On both points, as a matter of fact.
"[Defense counsel]: Yes, sir.
 "[Prosecutor]: Well, I know what one point I was going to talk about is. The striking of — I believe her name was P.B., I didn't bring my list in here.
"[Defense counsel]: That's the one.
 "[Prosecutor]: I liked her until she said she had heard of the State's two witnesses, had heard of Officer Bryan Crane or Paul Crane — he goes by both. He has had a lot of dealings with, as it turns out, black people in the community, especially in the area of where this case took place, Victory Lane. This woman lives very close to Victory Lane, lives on Oakwood Avenue. Since she has heard — she said she heard of him, hasn't heard of any other police officers but Bryan Crane, and since he has had problems and actually been brought before the police department by members of the black community for racial discrimination, and since the defendant is black in this case, we felt like she would not be able to put that out of her mind, and that's why we struck her.
 "THE COURT: Well, I'm not — I do not find any prima facie case, one, and, secondly, I find, even so, that the strike is not racially motivated. And your motion is overruled on both counts.
 "[Defense counsel]: May I make one other statement?
"THE COURT: No. You can make a motion.
 "[Defense counsel]: I would make a motion to reconsider on the basis that part of what [the prosecutor] has said is that she lives on Oakwood Avenue, which is near where this happened. She said she lives in Northwest. Oakwood runs one side of the city to the other, and —
 "THE COURT: It's still in the general area. So that doesn't make any difference, whatsoever.
"[Defense counsel]: Yes, sir."
The record indicates that there was no questions directed to juror P.B. by the prosecutor during voir dire regarding whether she lived on that part of Oakwood Avenue that is in the area where the crime was committed. The record does reveal that a white veniremember indicated that she had once lived in the area where the crime occurred, and that another white veniremember indicated that *Page 772 
he attended a church in the area, but neither were struck. Moreover, the record further indicates that defense counsel asked the following questions on voir dire regarding the venire's knowledge of the police officers involved in the case:
 "I believe [the prosecutor] has already asked you, but let me reiterate in case you have had time to think about it. Is there anyone here who knows either Roy Taylor or Paul Crane from the Huntsville Police Department, other than [the juror who knew Officer Taylor]? Anyone who knows any of those officers, in any way, have any dealings with them, seen them at a party, got a speeding ticket from them, or anything?
 "A JUROR: What about just hearing their name? I have heard Mr. — I don't know him, I don't know if he came in here, but I have heard his name.
"[Defense counsel]: One of the officers?
 "A JUROR: Yeah. The name Crane, but I don't know him.
 "[Defense counsel]: Okay. Would the fact that you have heard that man's name make any difference on who you would listen to in this case?
"A JUROR: No.
 "[Defense counsel]: I wouldn't expect so, but I have to ask. Sometimes these questions seem silly, but we have to ask silly questions sometimes."
After defense counsel completed his voir dire, the prosecutor conducted a "follow-up" examination of one veniremember, but failed to further question juror P.B.
In Duncan v. State, 612 So.2d 1304 (Ala.Cr.App. 1992), this court determined that the trial court's holding that the prosecutor's reasons for his peremptory challenges were race-neutral was "clearly erroneous." In that case, the following reason was given by the prosecutor for the strike of a black veniremember:
 "A black female was struck because she lived in an area close to the crime scene. Another black female was struck because she lived in an area close to the crime scene and because the chief deputy district attorney knew her family and knew that her family had a bad reputation with law enforcement. This latter potential juror had also indicated opposition to the death penalty. These two potential jurors were the only veniremembers struck because they lived near the crime scene. During the hearing, the prosecutor stated the reasons for the strike of one of these potential jurors as follows:
 " 'My fourteenth strike was juror number one. . . . [S]he is a black female. She lived in Sardis, which was in effect within five miles of the crime scene. That was the route that the alleged black Trans Am was supposed to have gone; also the route that Joe Duncan was supposed to have gone to meet Liz Cobb down at the church on County Road 6. That we knew that Joe Duncan's cover-up route that he went in the early morning hours went through the Sardis area; in fact, turned right at the blinking light — or turn left, coming from Selma. And we knew that was going to be discussed; and in fact was drawn out on a map. And for those reasons we struck everyone from that area.'
". . . .
 "The record indicates that there was no questioning of the venire panel concerning any knowledge that the members may have of this case because they lived in areas close to the crime scene. Moreover, the record is unclear as to how living close to the crime scene may have affected a juror's ability to hear this case."
612 So.2d at 1307-1308.
See also Harris v. City of Lipscomb, 602 So.2d 502, 503
(Ala.Cr.App. 1992); Moss v. City of Montgomery, 588 So.2d 520,526 (Ala.Cr.App. 1991).
In Williams v. State, 548 So.2d 501 (Ala.Cr.App. 1988), this court held that, where veniremembers are struck based on their association with a group, from which the prosecutor infers a bias on the part of the veniremembers, examination by the prosecutor during voir dire should establish that such a bias in fact exists.
In the present case, the fact that juror P.B. was struck without being questioned *Page 773 
individually on voir dire regarding any possible "residence-based bias" that she might have had raises a strong inference that she was struck solely on the basis of her race.Id.
This court, in Guthrie v. State, 598 So.2d 1013, 1020
(Ala.Cr.App. 1991), held:
 "Although there was a lengthy voir dire of the venire in this case, the prosecutor did not ask any questions about the relationships made the basis for his peremptory strikes. . . . The prosecutor's stated basis for his information concerning the various relationships of the veniremembers is vague and suspect. . . .
 "The importance of a thorough voir dire has repeatedly been stressed by the appellate courts of this state. See, e.g., Jackson v. State, 557 So.2d 855, 857 (Ala.Cr.App. 1990) ('We reiterate that the fact that the black jurors who were challenged without being examined on voir dire in reference to possible bias because of their employment, position in society, age, and residence raises a strong inference that they were excluded on the basis of race alone.') Here, the total lack of questioning to the challenged veniremembers concerning the basis for their challenges is fatal."
In Duncan, this court stated:
 "In Ex parte Branch, 526 So.2d 609 (Ala. 1987), the Alabama Supreme Court set out certain guidelines that could be used in evaluating whether a prosecutor's reason for an otherwise discriminatory strike was valid or sham. Some of the guidelines included: that the reasons were not related to the facts of the instant case; that the record demonstrated a lack of meaningful questions to the challenged juror; and that ' "an explanation [is] based on a group bias where the group trait is not shown to apply to the challenged juror specifically." ' Id. at 624, quoting Slappy v. State, 503 So.2d 350, 355 (Fla.Dist.Ct.App. 1987), affirmed, 522 So.2d 18 (Fla. 1988), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988).
 " 'This Court is acutely aware of the fact that an appellate court may reverse a trial judge's determination that the prosecution's peremptory challenges were not motivated by intentional discrimination only if that determination is clearly erroneous. Branch, 526 So.2d at 625. Yet, if Batson and Branch are to have any meaning, this Court must reverse where its independent review convinces it that a clear abuse of discretion is present. Our Supreme Court has warned that "[i]n determining whether the evidence is sufficient to create an inference of discrimination . . . [t]he trial court must use its discretion in weighing this kind of fact question, but this discretion must be tempered by a concern for the defendant's right to equal protection of the laws." Harrell [v. State], 555 So.2d [263,] 268 [(Ala. 1989)].
 " ' "Trial courts should not require a strict or rigid quantum of proof by the defendant of the Batson elements. Rather, out of a concern for equal protection and justice under the law, trial courts must be sensitive to the defendant's Batson claims, and should not lightly brush them aside. Batson demands that, in deciding whether the defendant has carried his burden of proving a prima facie case, the trial court 'must undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." ' Batson, 476 U.S. at 93 [106 S.Ct. at 1712]." Harrell, 555 So.2d at 268.
 " ' "The trial judge cannot merely accept the specific reasons given by the prosecutor at face value." Branch, 526 So.2d at 624.
 " 'Here, the State failed to carry its "burden of articulating a clear, specific, and legitimate reason for the challenge which relate[d] to the particular case to be tried, and which is nondiscriminatory." Branch, 526 So.2d at 623 (emphasis in [Branch]). "[T]he removal of even one juror for a discriminatory reason is a violation of the equal protection rights of both the excluded juror and the minority defendant." Harrell, 555 So.2d at 267.
 " 'In 1988, the Alabama Supreme Court in Branch, 526 So.2d at 621-26, established "some general guidelines" *Page 774 
for courts to follow in implementing the command of the United States Supreme Court in Batson. Both the letter and the spirit of those guidelines and that command must be satisfied in every case. Because they were not in this particular case, the judgment of the circuit court is reversed.'
 "Parker v. State, 568 So.2d 335, 338 (Ala.Cr.App. 1990)."
Duncan, 612 So.2d at 1310-11.
Moreover, the prosecutor's reason for striking this potential juror was based on a speculative bias on the part of the juror against a State's witness who was allegedly known for persecuting blacks and whom blacks have allegedly targeted in discrimination lawsuits. The prosecutor's ground for this speculation can be based only on this potential juror's race, because she responded only that she had heard of the officer's name, but that she did not know him and the fact that she had heard of him would not affect her ability to sit as a juror. There was no follow-up questioning as to this matter. Thus, there is a clear indication of racial discrimination in this strike.
The prosecutor's reasons for its peremptory strike of juror P.B. did not satisfy the requirements enunciated in Batson v.Kentucky, supra, and Ex parte Branch, supra; hence, the trial court's determination that the reasons provided by the prosecution were race neutral is "clearly erroneous" and the judgment is reversed.
REVERSED AND REMANDED.
All Judges concur except MONTIEL, J., who dissents with opinion.