The appellant was indicted for the intentional murder of Anthony Priest, in violation of § 13A-6-2, Code of Alabama 1975. He was found "guilty as charged in the indictment" by the jury and sentenced to 45 years' imprisonment by the trial judge.
The record reveals the following: Anthony Priest lived across the street from the appellant's ex-wife, Betty DeRamus. Priest and DeRamus were involved in a romantic relationship. Betty DeRamus testified that she was preparing dinner at Priest's house at approximately 6:30 p.m. on October 6, 1987, when her son came and told her that the appellant was at their house. The appellant was in the military and had recently returned from a temporary duty assignment. DeRamus's two younger children and her daughter, Michelle, and Michelle's two children were also at the house. *Page 1169 
DeRamus testified that the appellant asked her why she had called his commander and she responded that she had called concerning the appellant's failure to make payments in bankruptcy on a car that was in both their names. She testified that she and the appellant had a heated conversation. The appellant then asked her why their children were sleeping on the floor while another man's children were sleeping in the bed. She denied that this had occurred. The appellant then said he wanted to see Priest.
When Priest arrived, the appellant started an argument with him. DeRamus testified that Priest suggested they discuss the matter outside. They came back inside after a few minutes. Priest said the appellant should have introduced himself and they could have discussed the matter calmly. After a brief conversation, Priest left the room. DeRamus testified that the appellant then said, "I started to waste your friend just now." (R. 29) The appellant opened his jacket and DeRamus saw a gun. She had not seen him carry a gun before.
Priest came back into the room and DeRamus told him about the appellant's threat. Priest threw up his hands in a frustrated manner and said, "Just waste me." (R. 32). Priest started toward the door to leave. DeRamus testified that the appellant and Priest grabbed the doorknob at the same time and started to struggle. Priest opened the door. The appellant grabbed him with one hand and reached for his gun. DeRamus heard the gun fire. The gun was a few inches away from Priest. Priest ran out of the house and the appellant continued to fire in Priest's direction. DeRamus went in the house and called the operator. She heard two or three more shots and heard the appellant say he would be back for Priest. After hearing the appellant drive off, she went outside and found Priest lying on the ground.
DeRamus's daughter, Michelle DeRamus Bush, was also at the house on the night Priest was shot. Her testimony was substantially the same as DeRamus's. She also testified that her mother and the appellant argued. After Priest arrived, he and the appellant went outside for a few minutes. After they came back in, Priest left the room. She also heard the appellant state, "I started to waste your friend." (R. 130) After Priest said, "Just waste me," they started toward the door. She saw them struggle at the door and heard a gunshot. She heard three or more gunshots after the first shot.
Two bullets were removed from Priest. The Dale County Coroner testified that Priest died as a result of the second shot which entered the back of his chest and passed through his right lung and heart. He also testified that Priest could have survived the first gunshot to the abdomen with proper medical attention. He testified that there were no powder burns on Priest's hands.
The appellant testified that his younger daughter called him on October 5 and his son called him on October 6 asking to see him. His daughter denied this. He testified that he went to the house on October 6 and had an argument with his wife. DeRamus testified that, after Priest arrived, Priest asked appellant to come outside. He testified that, when they were outside, Priest hit him a few times with his fist, but he would not fight back. The appellant did not tell the police about this incident when he made his statement. He stated that Priest followed him back inside the house. The appellant testified that "he might have said he could have wasted him." (R. 206) He testified that, after his ex-wife told Priest about the threat, Priest came toward him. The appellant stated that he closed the door. Priest moved the appellant's hand from the door and the appellant tried to get away. Priest was standing in the doorway and told him to "come on." (R. 207) He testified that, when he refused, Priest came toward him. The appellant pulled his gun out and Priest came at him. He testified that both his hand and Priest's hand were on the gun when it fired. The appellant testified that Priest backed out the door and said he was going to get his gun. Neither DeRamus nor Bush heard Priest make this statement. The appellant *Page 1170 
stated that he was trying to shoot Priest in the leg as he ran across the yard.
Several witnesses testified that they had never seen the appellant with a gun. The appellant raises four issues on this appeal.
 I
The appellant contends that the following portion of the trial court's oral charge violated the Due Process Clause by shifting the burden of proof on the element of intent to the appellant:
 "A specific intent to kill the deceased, Anthony Priest, is an essential ingredient of murder as charged in the indictment. It may be inferred from the character of the assault, the use of a deadly weapon or any other circumstance." (R. 325)
The appellant erroneously contends that this language created a mandatory presumption that the appellant's intention was established from the act of using a deadly weapon.
The Due Process Clause of the Fourteenth Amendment "prohibits the State from using evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every element of a crime." Francis v. Franklin, 471 U.S. 307, 105 S.Ct. 1965,1970, 85 L.Ed.2d 344 (1985).
"A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive reference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion." Francis v.Franklin, 471 U.S. at 314, 105 S.Ct. at 1971. A permissive inference only violates the Due Process Clause "if the suggested conclusion is not one that reason and common sense justify in light of the facts before jury." 471 U.S. at 314,105 S.Ct. at 1971.
The challenged portion of the presumption does not create a mandatory presumption nor does it create a permissive inference which suggests an unreasonable conclusion. The specific language cited by the appellant could not reasonably have been understood as creating a presumption which relieved the State of its burden of proof on the element of intent. Even if the challenged portion, viewed in isolation, appeared inadmissible, the charge on the element of intent, as a whole, did not have the effect of relieving the State of its burden of proof. SeeFrancis v. Franklin. (If specific words of a jury can be reasonably understood as creating a presumption, the charge must be considered as a whole.) No error appears.
 II
The appellant next contends that the trial court erred in failing to charge the jury on criminally negligent homicide.
"A person commits the crime of criminally negligent homicide if he causes the death of another by criminal negligence." Ala. Code § 13A-6-4(a) (1975). "A person acts with criminal negligence with respect to a result or to a circumstance which is defined by statute as an offense when he fails to perceive a substantial and unjustifiable risk that the result will occur or the circumstance exists." Ala. Code § 13A-2-2(4) (1975). Seealso Wiggins v. State, 491 So.2d 1046, 1048 (Ala.Crim.App. 1986) ("An instruction on criminally negligent homicide is proper only where the victim's death was caused by the inadvertent creation and subsequent disregard of a risk of harm of which he should have been aware, but which in fact he was not aware of.").
There is no evidence in this case that the appellant was unaware of the risk that could result from his actions. Two witnesses testified that, minutes before the appellant shot Anthony Priest, the appellant said, "I was going to waste your friend." (R. 29, 130) The appellant himself testified that he pulled his gun out. After Priest was first shot, the appellant continued to shoot at Priest, in the dark, as Priest ran across the yard.
The appellant's conduct excludes the possibility of inadvertent or negligent risk creation. "One who intentionally draws a gun in response to or in anticipation of a confrontation *Page 1171 
with another is certainly aware that the gun might discharge; therefore he cannot be guilty of mere criminal negligence."Robinson v. State, 441 So.2d 1045, 1047 (Ala.Crim.App. 1983);Wakefield v. State, 447 So.2d 1325 (Ala.Crim.App. 1983). Seee.g., Lawson v. State, 476 So.2d 116 (Ala.Crim.App. 1985) (defendant's conduct excluded the possibility of criminal negligence when he shot into a line of eighteen people); Rainesv. State, 455 So.2d 967 (Ala.Crim.App. 1984) (no negligent or inadvertent risk created when the defendant intentionally fired his weapon at a passing car).
Even if there had been evidence that Priest's death could have been the result of criminal negligence, the trial court's failure to instruct on criminally negligent homicide would not require a reversal. Having found the appellant guilty of intentional murder rather than manslaughter, it would be illogical to conclude that the jury would have found him guilty of criminally negligent homicide had they been given the opportunity. Lovell v. State, 521 So.2d 1346 (Ala.Crim.App. 1987); Jones v. State, 514 So.2d 1060 (Ala.Crim.App. 1987).
 III
The appellant contends that the trial court erred in denying his motion for new trial because one juror considered evidence outside the record and such evidence influenced his deliberations. This argument had absolutely no merit.
The record reveals that a juror bought a gun permit shortly before the jury began its deliberations. The juror testified that he had been intending to purchase a gun permit for some time and used his break time to purchase the permit. He further testified that his acts did not influence him or the jury deliberations in any way. Furthermore, there was no evidence presented at trial concerning the acquisition of pistol permits. The appellant simply testified that he purchased the pistol at a pawn shop several months before the shooting. Any information the juror received concerning pistol permits had absolutely no relevance to this trial. See Flowers v. State,402 So.2d 1118 (Ala.Crim.App. 1981).
A trial judge's decision as to whether juror misconduct caused a party to not have an impartial trial will only be reversed for a clear abuse of discretion. Hartley v. State,516 So.2d 802 (Ala.Crim.App. 1986); Cox v. State, 394 So.2d 103
(Ala.Crim.App. 1981). The appellant has failed to show that any misconduct even occurred.
 IV
The appellant finally contends that the evidence is insufficient to sustain his conviction because the State failed to prove the element of intent. The appellant apparently contends that his conviction cannot stand because his testimony that he shot at the victim out of fear negated any evidence of intent. This argument has no merit as there is ample evidence to support the appellant's conviction.
The appellant carried to his ex-wife's house a loaded weapon, which was concealed in his clothing. The evidence indicates that the appellant normally did not carry a weapon. Two witnesses testified that shortly before the first shot the appellant stated that he had started to "waste" Anthony Priest. There was testimony that the appellant prevented Priest from leaving the house, drew his gun and shot at him. After the initial shot, the appellant followed Priest outside and continued to shoot. We find that there was more than sufficient evidence of intent. Intent may be inferred from the use of a deadly weapon, the character of the assault, or other attendant circumstances. Garrison v. State, 521 So.2d 997
(Ala.Crim.App. 1986); Fordham v. State, 513 So.2d 31 (Ala.Crim.App. 1986); Toles v. State, 484 So.2d 512 (Ala.Crim.App. 1985).
A conviction will not be set aside on the basis of insufficiency unless "allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust." Johnson v. State, 378 So.2d 1164, 1169
(Ala.Crim.App.), cert. quashed, *Page 1172 378 So.2d 1173 (Ala. 1979). See also, Morton v. State,338 So.2d 423 (Ala.Crim.App.), cert. denied, 338 So.2d 428 (Ala. 1976). Any conflict in the evidence presents a jury question.Hughes v. State, 412 So.2d 296 (Ala.Crim.App. 1982); Gullattv. State, 409 So.2d 466 (Ala.Crim.App. 1981).
A review of this record reveals that there is sufficient evidence to sustain this conviction and the motion for new trial was, therefore, properly denied.
For the reasons shown, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.