[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 522 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 523 
 ON APPLICATION FOR REHEARING
The opinion previously issued in this case is hereby withdrawn and the following opinion substituted therefor.
The appellant, Gary Davis Hart II, was found guilty of murder made capital because it was committed during the course of a robbery in the first degree. See § 13A-5-40(a)(2), Code of Alabama 1975. The jury, by a vote of 11 to 1, recommended the death penalty. The trial court accepted the jury's recommendation and sentenced the appellant to death by electrocution.
The evidence presented at trial tended to show the following: On August 12, 1989, the appellant and his accomplice, who were each armed with a handgun, entered the rear door of the L N Seafood restaurant in Mobile, Alabama. Standing near the rear door was the restaurant's bartender, Steve Mason. Upon entering the restaurant, the appellant grabbed Steve Mason by the shirt, prodded him in the back with a .38 caliber pistol, and announced "this is a hold up, take me to the safe." Mr. Mason led the appellant to the office where the victim, Todd Evans, was working. Mr. Mason then informed the victim that they were being robbed and that the appellant wanted money. The victim did not reply but met the demand for money with a look of surprise. The appellant then shouted, "This ain't no bullshit," and brought the pistol within two feet of the victim's head and fired. The bullet entered the left side of the victim's face, traveled through his brain, and then lodged under the scalp on the right side of his head.
Immediately following the shooting, Steve Mason retrieved a cash drawer from a filing cabinet in the victim's office and gave it to the appellant. The appellant and his partner then fled the scene on foot. They were spotted at a nearby hotel and after a brief chase were apprehended. During the chase, the appellant discarded a .38 caliber pistol, which was later identified as the murder weapon. At the time of the appellant's arrest, he was in possession of $499 in cash.
The appellant presents numerous issues on appeal, many of which were not raised by objection in the trial court. This fact alone will not bar our review of such issues in a case involving the death penalty: however, it will weigh against any claim of prejudice. Ex parte Kennedy, 472 So.2d 1106
(Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340,88 L.Ed.2d 325 (1985). See also, Rule 45A, Ala.R.App.P.; Williams v.State, 601 So.2d 1062 (Ala.Cr.App. 1991).
 I
The appellant, relying on Batson v. Kentucky,476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), maintains that he was denied the right to a fair and impartial jury by the state's use of peremptory challenges to remove black veniremembers from the jury. The state and the defense counsel were each allowed 12 peremptory strikes. The state used three of its strikes to remove black veniremembers. Two black veniremembers sat on the jury. After the jury was selected the appellant made a Batson motion, claiming that the state struck 60% of the black veniremembers for racial, not neutral, reasons.
Immediately after the Batson motion was made, the state volunteered its reasons for striking black veniremembers. Once the prosecution responds to a Batson motion and offers race-neutral explanations for its peremptory challenges, the issue of whether a prima facie showing of intentional discrimination was made by the appellant becomes moot.Hernandez v. New York, ___ U.S. ___, 111 S.Ct. 1859, *Page 524 
114 L.Ed.2d 395 (1991). This court has also concluded that where the trial court has made no express finding of a prima facie case of intentional discrimination, but the prosecution nonetheless explains its peremptory challenges, then such a finding will be implied and we will proceed directly to the evaluation of the prosecutor's explanations. Williams v.State, 548 So.2d 501 (Ala.Cr.App. 1988), cert. denied,489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989); Currinv. State, 535 So.2d 221 (Ala.Cr.App.), cert. denied,535 So.2d 225 (Ala. 1988).
The state gave the following reasons for its peremptory strikes: Juror 150 "was struck because she was unemployed;" juror 121 was struck "because she was the wife of a minister;" and juror 146 was struck "because, first of all, he had an earring in his ear, secondly, . . . during my questioning, [he was] hostile, . . . and during the questioning of Mr. Pennington, totally inattentive."
Each of the grounds articulated by the prosecutor in justifying his peremptory strikes could be considered a reasonable and race-neutral explanation for the exercise of a peremptory challenge. The fact that a veniremember is unemployed may constitute a valid reason for the exercise of a peremptory strike. Stephens v. State, 580 So.2d 11
(Ala.Cr.App. 1990), aff'd, 580 So.2d 26 (Ala. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 176, 116 L.Ed.2d 138 (1991);Cowan v. State, 579 So.2d 13 (Ala.Cr.App. 1990);Bedford v. State, 548 So.2d 1097 (Ala.Cr.App. 1989). Because in this case the prosecutor equally applied the reason of being unemployed to both white and black veniremembers, we find such explanation to be race-neutral. A veniremember's demeanor may also form the basis for a valid race-neutral challenge. United States v. Lance, 853 F.2d 1177 (5th Cir. 1988); United States v. Forbes, 816 F.2d 1006
(5th Cir. 1987); McGahee v. State, 554 So.2d 454
(Ala.Cr.App.), aff'd, 554 So.2d 473 (Ala. 1989). The fact that a veniremember is a minister or a minister's wife may be a valid race-neutral reason for striking that veniremember. In the instant case, where the appellant faces the death penalty, the fact that the veniremember is a minister or minister's wife is a legitimate reason to question that prospective juror's willingness to impose the death penalty. Cf. Currin v.State, 535 So.2d 221 (Ala.Cr.App.), cert. denied,535 So.2d 225 (Ala. 1988). However, we recognize that in some cases this reason may be suspect. Ex parte Bird,594 So.2d 676 (Ala. 1991); Jackson v. State, 557 So.2d 855
(Ala.Cr.App. 1990).
Having determined that the prosecutor's explanations for his strikes were on their face race-neutral, we now consider other relevant factors to determine whether those explanations are valid or are merely pretexts for discrimination.Batson, supra. In Ex parte Branch,526 So.2d 609 (Ala. 1987), our Supreme Court outlined other relevant factors, including the following:[1] The prosecutor's pattern of strikes against black members of this particular venire, the past conduct of this prosecutor in using peremptory challenges to strike black veniremembers, the type and manner of questions asked of those jurors who were struck, and any disparate treatment by the prosecution between white and black veniremembers.
In considering these factors, we find that the Mobile County district attorney's office has been involved in at least two cases which this court has reversed for Batson
violations.[2] This fact alone, however, does not prove that the prosecutor's strikes were employed in a racially discriminatory manner. Mitchell v. State, 579 So.2d 45
(Ala.Cr.App. 1991).
Few, if any, follow-up questions were asked of the venire, including those *Page 525 
members who were peremptorily challenged by the state. However, follow-up questioning is not required in every case where aBatson challenge has been presented in order for the state to successfully meet its burden. United States v.Grandison, 885 F.2d 143 (4th Cir. 1989), cert. denied,495 U.S. 934, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1989).
Finally, we must determine whether there was disparate treatment of white and black veniremembers. The record does reflect that the state used only 3 of its 12 strikes against black veniremembers and that 2 blacks were seated on the jury. Also, while the prosecutor was explaining his peremptory challenges, he noted that the challenges to jurors number 150 (unemployed) and 121 (minister's wife) were the same reasons given for striking white prospective jurors.
"It is within the sound discretion of the trial court to determine if the State's peremptory challenges of black jurors are motivated by intentional racial discrimination." Exparte Lynn, 543 So.2d 709, 712 (Ala. 1988), cert. denied,493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989). This court can only reverse the trial court's finding of no discrimination if that determination is clearly erroneous. Ex parteBranch, 526 So.2d 609 (Ala. 1987). In the present case, the trial court determined that the State's reasons for its peremptory strikes were race-neutral. After considering the factors set forth above, we find that the ruling of the trial court was not "clearly erroneous."
 II
The appellant also alleges that the trial court erred in denying him youthful offender status pursuant to § 15-19-1, Code of Alabama 1975. Section 15-19-1 provides, in pertinent part:
 "(a) A person charged with a crime which was committed in his minority but was not disposed of in juvenile court and which involves moral turpitude or is subject to a sentence of commitment for one year or more shall, and if charged with a lesser crime may be investigated and examined by the court to determine whether he should be tried as a youthful offender. . . .
 "(b) After such investigation and examination, the court, in its discretion, may direct that the defendant be arraigned as a youthful offender, and no further action shall be taken on the indictment or information; or the court may decide that the defendant shall not be arraigned as a youthful offender, whereupon the indictment or information shall be deemed filed."
(Emphasis added.)
This section does not require a full, formal hearing.Clemmons v. State, 294 Ala. 746, 321 So.2d 238 (1975). It requires only that "some measure of inquiry or examination" be conducted. Prince v. State, 392 So.2d 853, 856
(Ala.Cr.App. 1980), cert. denied, 392 So.2d 857 (Ala. 1981). Once this inquiry has been conducted, the decision to grant or to deny youthful offender status rests solely with the trial court. Goolsby v. State, 492 So.2d 635 (Ala.Cr.App. 1986); Barnett v. State, 348 So.2d 512 (Ala.Cr.App. 1977), cert. denied, 351 So.2d 571 (1977); McClendon v.State, 341 So.2d 174 (Ala.Cr.App. 1976), cert. quashed,341 So.2d 178 (Ala. 1977); Smith v. State, 55 Ala. App. 323, 314 So.2d 925 (1975). Once the trial court has made a decision to deny youthful offender status, this court will not overturn such a decision absent an affirmative showing that the decision was arbitrary or without the benefit of some form of investigation or examination. Reese v. State,381 So.2d 107 (Ala.Cr.App. 1980); Morgan v. State,363 So.2d 1013 (Ala.Cr.App. 1978).
In the present case, the trial court conducted the requisite inquiry and thereafter denied the appellant youthful offender status. The trial court fully complied with § 15-19-1, Code of Alabama 1975.
 III
The appellant further alleges that the trial court's rulings on his discovery motions were error. The trial court correctly allowed for discovery as provided by Rule *Page 526 
18, A.R.Crim.P.Temp. However, no statements of witnesses or grand jury minutes or work product made by the prosecution's office were given to the appellant. No error occurred here. As Rule 18.1(e) states:
 "[T]he discovery or inspection of reports, memoranda, witness lists, or other internal state documents made by the district attorney or his agents, or by law enforcement agents, in connection with the investigation or prosecution of the case, or of statements made by state witnesses or prospective state witnesses, is not authorized."
 IV
The appellant maintains that the trial court erred by allowing the State to ask potential jurors how the appellant's age would have an impact on their likelihood to recommend the death penalty. He contends that this "age" qualification was in violation of Witherspoon v. Illinois, 391 U.S. 510,88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and Wainwright v.Witt, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).
This court has determined that voir dire questioning concerning veniremembers' "attitudes about capital punishment are not limited to those questions which would elicit information which would constitute grounds of a challenge for cause." Brown v. State, 288 Ala. 684, 264 So.2d 553,554 (1972). In the case at hand, the following questions were asked during voir dire:
 "[PROSECUTOR]: And my question to you is: even if you believe death by electrocution to be an appropriate punishment for an adult, is there any one of you who would automatically refuse to impose the death penalty on a sixteen-year-old, if he were convicted of an intentional killing in the course of a robbery?"
 "[DEFENSE COUNSEL]: I'm going to object to the question, Your Honor. It's asking the jury to make a commitment as to what they would or would not do at this point in time without ever hearing the evidence.
"THE COURT: Overruled.
 "[PROSECUTOR]: Would the fact that the Defendant was sixteen years old cause any one of you to automatically refuse, again, if satisfied upon the evidence that he is guilty as charged, to impose the death penalty solely because of his age?" (R. 95-96.)
Additionally, in a later question the prosecutor informed the venire that it would be called upon to consider all aggravating and mitigating circumstances and that the appellant's age at the time of the offense was a mitigating circumstance. This question is strikingly similar to a question posed in Fordv. State, 515 So.2d 34 (Ala.Cr.App. 1986), aff'd,515 So.2d 48 (Ala. 1987), cert. denied, 484 U.S. 1079,108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988), which this court found to be permissible. In Ford, the prosecutor asked the venire:
 "Okay. We'll start with, again, this Defendant is nineteen years of age; would that, in your mind, if you believe beyond a reasonable doubt and to a moral certainty that this Defendant was, in fact, guilty of the offense of capital murder and that the case was so aggravated or aggravating type circumstances outweighed all of the mitigating circumstances, would you refuse to vote for the death penalty simply because the Defendant was nineteen years of age?"
515 So.2d at 45.
As in Ford, the question posed herein did not solicit a promise of a particular verdict. See also Exparte Dobard, 435 So.2d 1351 (Ala. 1983), cert. denied,464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). Likewise, the prosecutor in asking the question did not strive to have the veniremembers disregard any recognized mitigating circumstance. The questioning in the instant case was permissible.
 V
The appellant also alleges error in the trial court's denial of his motion for change of venue. He argues that the publicity that surrounded his case was so pervasive as to entitle him to a new venue.
A change of venue must be granted when it can be demonstrated that the *Page 527 
community has been so pervasively saturated by the publicity surrounding a case as to make the court proceedings nothing more than a "hollow formality," Rideau v. Louisiana,373 U.S. 723, 726, 83 S.Ct. 1417, 1419, 10 L.Ed.2d 663 (1963), or actual prejudice, Irvin v. Dowd, 366 U.S. 717,81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). This precept has been codified in this state at § 15-2-20, Code of Alabama 1975. See also Nelson v. State, 440 So.2d 1130 (Ala.Cr.App. 1983); Langham v. State, 494 So.2d 910 (Ala.Cr.App. 1986). "It is not required, however, that the jurors be totally ignorant of the facts and issues involved." Irvin,366 U.S. at 722, 81 S.Ct. at 1642.
The burden of showing actual prejudice or community saturation with prejudicial publicity lies with the appellant.Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507,16 L.Ed.2d 600 (1966). In addition, the appropriate method to establish the existence of adverse publicity or actual prejudice is through voir dire examination of potential jurors.Anderson v. State, 362 So.2d 1296 (Ala.Cr.App. 1978);Ex parte Grayson, 479 So.2d 76 (Ala.), cert. denied,474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985).
In this case, the venire was questioned concerning pretrial publicity by defense counsel and by the court. Most members of the venire expressed some knowledge of the case but indicated that they could put that knowledge aside and base their decision solely on the evidence presented. Furthermore, during the change of venue motion hearing, the appellant's counsel presented various media reports that were aired or published subsequent to the appellant's arrest. The record contains no evidence to suggest that any of these reports were inflammatory or prejudicial. We find no indication from the record that either the community or the venire was so prejudiced against the appellant as to deny him a fair and impartial jury. "For the appellant to be entitled to a new trial based on pretrial publicity he must show that the publicity created a 'significant possibility of prejudice.' " Yelder v.State, [Ms. 3 Div. 212, October 11, 1991], 1991 WL 238088, * 5 (Ala.Cr.App. 1991). There was no such showing in the instant case. See also Parker v. State, 587 So.2d 1072
(Ala.Cr.App. 1991).
Further, during the hearing on the appellant's motion for a change of venue, he requested funds to conduct a survey of community attitudes toward the crime for which he was charged. The trial court denied this request. The appellant complains that the denial of these funds precluded him from receiving a fair trial.
This court has already determined that an accused is not entitled to expenses to conduct public opinion surveys.Holladay v. State, 549 So.2d 122 (Ala.Cr.App. 1988), aff'd, 549 So.2d 135 (Ala.), cert. denied, 493 U.S. 1012,110 S.Ct. 575, 107 L.Ed.2d 569 (1989). As discussed above, the appropriate method to establish the existence of adverse publicity or actual prejudice is through voir dire examination of potential jurors. Anderson v. State, 362 So.2d 1296
(Ala.Cr.App. 1978); Ex parte Grayson, 479 So.2d 76
(Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189,88 L.Ed.2d 157 (1985). There was no abuse of the trial court's discretion in denying the appellant's request for these extraordinary expenses.
 VI
The appellant also alleges various instances of what he considers "prosecutorial misconduct." These include allegations that the prosecutor misstated the facts and the law during both its guilt phase and sentencing phase arguments before the jury. In order for a prosecutor's comments made during argument before the jury to require a new trial, the entire trial must have been so infected with unfairness as a result of these comments that the appellant was denied due process. Dardenv. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471,91 L.Ed.2d 144 (1986). We have reviewed all of the allegations of misconduct presented by the appellant in his brief and hold that there is no showing that the appellant has been denied due process. *Page 528 
 VII
The appellant's next contention is that the trial court erred in receiving "pictures that were taken during the autopsy of the victim" into evidence. He claims that these photographs were unnecessary and extremely prejudicial. Again, the record is unsupportive of the appellant's claim.
The court received a singular photograph of the victim into evidence (State's exhibit 10). This photograph did not depict the victim's body after it had been subjected to autopsy procedures. Instead, the photograph depicted the entry wound on the left side of the victim's face. Photographs which depict external wounds of the victim are admissible when they tend to show the location and the extent of the injuries even if they could be deemed gruesome or cumulative. Bankhead v.State, 585 So.2d 97 (Ala.Cr.App. 1989), remanded on other grounds on rehearing, 585 So.2d 112 (Ala.), on remand,585 So.2d 133 (Ala.Cr.App. 1991); Ex parte Siebert,555 So.2d 780 (Ala.), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297,111 L.Ed.2d 806 (1990). See also Hamrick v. State,548 So.2d 652 (Ala.Cr.App. 1989) (nine photographs of the gunshot wound to the victim's face were admissible). See alsoParker, supra. The decision to receive photographs into evidence is within the discretion of the trial court.Kelley v. State, 568 So.2d 405 (Ala.Cr.App. 1990). In the case at hand, we find no abuse of this discretion.
 VIII
The appellant contends that the trial court's jury charge was inadequate in that it failed to incorporate a lesser included charge of reckless murder and otherwise operated to mislead the jury.
The appellant suggests that although the trial court did charge the jury on the lesser included offense of felony murder, a charge on the offense of reckless murder should also have been given. Section 13A-5-40(b), Code of Alabama 1975, provides that:
 "[T]he terms 'murder' and 'murder by the defendant' as used in this section to define capital offenses mean murder as defined in section 13A-6-2(a)(1) [intentional murder], but not as defined in section 13A-6-2(a)(2) [reckless murder] and (3) [felony murder]. Subject to the provisions of section 13A-5-41, murder as defined in section 13A-6-2(a)(2) and (3), as well as murder as defined in section 13A-6-2(1) may be a lesser included offense of the capital offenses defined in subsection (a) of this section."
The test to be applied in determining whether the jury is to be charged on a lesser included offense is whether there was evidence presented that would support a verdict on the lesser included offense. Ex parte Kerr, 474 So.2d 145 (Ala. 1985). In the case at hand, there was no evidence presented to support a verdict on the lesser offense of reckless murder.
The evidence tended to show that the appellant intentionally cocked the pistol prior to entering the restaurant, used the pistol to force the bartender into the manager's office, and finally pointed the pistol at the victim's face and fired. "No error occurs in not giving a charge on a lesser included offense when there is no reasonable theory to support the lesser offense." Williams v. State, 601 So.2d 1062
(Ala.Cr.App. 1991). " 'A trial judge may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense.' " Dill v. State,600 So.2d 343 (Ala.Cr.App. 1991), quoting Gurganus v.State, 520 So.2d 170, 174 (Ala.Cr.App. 1987). Therefore, the trial court did nor err in its refusal to charge on the offense of reckless murder.
The appellant also argues that the trial court's instructions to the jury concerning the element of intent were flawed. Specifically, he alleges that the court instructed the jury that they could infer the element of intent from the appellant's use of a pistol during the robbery, and in doing so, shifted the burden of proof of intent to him. The trial court instructed the jury that "malice and intent may be inferred from the use of a pistol." This instruction *Page 529 
is presently consistent with Alabama law. See DeRamus v.State, 565 So.2d 1167 (Ala.Cr.App. 1990); Garrison v.State, 521 So.2d 997 (Ala.Cr.App. 1986). Nevertheless, the appellant maintains that such instructions violate the United States Supreme Court's holding in Sandstrom v.Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39
(1979), because they shift the burden of proof of intent from the State to the defendant.
In Sandstrom, the Supreme Court held that instructions which a reasonable jury could interpret as an "irrebuttable direction by the court to find intent" violate a defendant's due process rights. Sandstrom,442 U.S. at 517, 99 S.Ct. at 2455-56. The complained-of instruction inSandstrom was as follows: "[T]he law presumes
that a person intends the ordinary consequences of his voluntary acts." The instruction in Sandstrom created a "mandatory presumption."
In DeRamus v. State, 565 So.2d 1167 (Ala.Cr.App. 1990), the trial court gave a similar instruction to the jury as the one involved in the instant case. The instruction stated, " '[Intent] may be inferred from the character of the assault, the use of a deadly weapon or any other circumstances.' " 565 So.2d at 1170. We stated that this instruction created a "permissive inference," and was not error.
 " 'A mandatory presumption instructs the jury that it must infer the presumed fact if the State proves certain predicate facts. A permissive reference suggests to the jury a possible conclusion to be drawn if the State proves predicate facts, but does not require the jury to draw that conclusion.' Francis v. Franklin, 471 U.S. [307] at 314, 105 S.Ct. [1965] at 1971 [85 L.Ed.2d 344 (1985)]. A permissive inference only violates the Due Process Clause 'if the suggested conclusion is not one that reason and common sense justify in light of the facts before [the] jury.' 471 U.S. at 314, 105 S.Ct. at 1971."
565 So.2d at 1170. The cited instruction in the instant case created a permissive inference. "The specific language cited by the appellant could not reasonably have been understood as creating a presumption which relieved the State of its burden of proof on the element of intent." 565 So.2d at 1170.
We have reviewed the appellant's other arguments concerning the trial court's instructions on intent and have found no error.
The appellant next contends that the trial court's instruction on reasonable doubt reduced the state's burden in proving its case and therefore violated the United States Supreme Court holding in Cage v. Louisiana,498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). In the instant case the trial court at one point in his instructions at the guilt phase equated "reasonable doubt" with "reasonable substantial doubt." No other language found offensive by the court inCage was present in this trial court's instructions. This court has recently dealt with this issue on several occasions and found that similar instructions to that involved in the present case did not violate Cage. McMillian v.State, 594 So.2d 1253 (Ala.Cr.App. 1991); Earhart v.State, 593 So.2d 119 (Ala.Cr.App. 1991); Williams v.State, 601 So.2d 1062 (Ala.Cr.App. 1991); Adams v.State, 587 So.2d 1265 (Ala.Cr.App. 1991). The trial court's instructions on reasonable doubt did not violateCage. See also memorandum opinion issued by the Supreme Court, Gaskins v. McKellar, ___ U.S. ___,111 S.Ct. 2277, 114 L.Ed.2d 728 (1991).
The appellant further contends that the trial court erred in giving the jury the following instruction concerning the appellant's testimony at trial:
 "The Defendant in this case has taken the stand in his own behalf, and he had a perfect right to do that. You can't capriciously disregard his testimony. In fact, you should consider his testimony as you would that of any other witness in the case. And, of course, in so doing, you may consider the fact that he is the Defendant, and he is interested in the outcome of the case." *Page 530 
This instruction was not error. Morgan v. State,568 So.2d 427 (Ala.Cr.App. 1990); Lee v. State,562 So.2d 657 (Ala.Cr.App. 1989); Banks v. State, 448 So.2d 973
(Ala.Cr.App. 1984); Hill v. State, 409 So.2d 943
(Ala.Cr.App. 1981).
The appellant next argues that the trial court erred in instructing the jury on evidence of flight. The court charged the jury that any evidence that may have been introduced tending to show flight from the scene of the crime could be considered with all the other evidence. This is consistent with Alabama law.
 "In a criminal prosecution the state may prove that the accused engaged in flight to avoid prosecution. This principle is based upon the theory that such is admissible as tending to show the accused's consciousness of guilt. The flight of the accused is admissible whether it occurred before or after his arrest."
C. Gamble, McElroy's Alabama Evidence § 190.01 (4th ed. 1991) and cases therein.
 IX
The appellant further alleges that the evidence presented at trial was insufficient to convict him of capital murder. The state's evidence showed that the appellant entered the restaurant with an accomplice and that both were carrying guns. The appellant asked for money and was taken to the victim's office. When the victim was told that the appellant wanted money, he hesitated, and the appellant put the gun near the victim's head and shot him. Several witnesses testified to these facts at trial. The appellant, when apprehended, was seen discarding the gun that was later identified as the murder weapon. There was clearly sufficient evidence to present the case to the jury for its determination. See Williams v.State, 601 So.2d 1062 (Ala.Cr.App. 1991); Kuenzel v.State, 577 So.2d 474 (Ala.Cr.App. 1990), aff'd,577 So.2d 531 (Ala.), cert. denied, ___ U.S. ___, 112 S.Ct. 242,116 L.Ed.2d 197 (1991).
 X
The appellant raises the following issues concerning the penalty phase of his trial. Initially, he contends that the trial court erred in not allowing his mother to testify during the penalty phase that her son had shown remorse since the shooting took place. The appellant's allegation is not supported by the record.
 "A capital sentence may not refuse to consider or be 'precluded from considering' mitigating factors. Eddings v. Oklahoma, 455 U.S. 104, 110 [102 S.Ct. 869, 874, 71 L.Ed.2d 1] (1982) (quoting Lockett v. Ohio, 438 U.S. 586, 604 [98 S.Ct. 2954, 2964, 57 L.Ed.2d 973] (1978)). The capital defendant generally must be allowed to introduce any relevant mitigating evidence regarding his character or record and any of the circumstances of the offense, and consideration of such evidence is a constitutionally indispensable part of the process of inflicting the penalty of death. California v. Brown, 479 U.S. 538
[107 S.Ct. 837, 93 L.Ed.2d 934] (1987)."
Haney v. State, 603 So.2d 368, 389 (Ala.Cr.App. 1991).
The appellant's mother was allowed to testify three times that the appellant had shown remorse for his actions. She was not allowed to testify whether she believed the appellant's expressions of remorse. The trial court correctly limited questions asked of the appellant's mother concerning her knowledge of whether the appellant's feelings were genuine. C. Gamble, McElroy's Alabama Evidence § 128.08 (4th ed. 1991) and cases cited therein. No error occurred here.
 XI
The appellant next contends that the trial court's instructions at the penalty phase were inadequate to instruct the jury on its function. Section 13A-5-6(d), Code of Alabama 1975, states, "After hearing the evidence and the arguments of both parties at the sentence hearing, the jury shall be instructed on its function and on the relevant law by the trial judge."
 "As the Supreme Court of the United States stated in California v. Brown, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), when deciding whether a trial *Page 531 
court erred in delivering a jury instruction, we must consider the interpretation a reasonable juror places on the instruction,
 " ' "focus[ing] initially on the specific language challenged." Francis v. Franklin, 471 U.S. [307, 315, 105 S.Ct. 1965, 1971, 85 L.Ed.2d 344 (1985)]. If the specific instruction fails constitutional muster, we then review the instructions as a whole to see if the entire charge delivered a correct interpretation of the law.'
"California v. Brown, 479 U.S. at 541
[107 S.Ct. at 839]." Williams v. State, 601 So.2d at 1080.
Initially, the appellant maintains that the jury was not instructed that it could consider any evidence in mitigation even though it was not statutory. This contention is not supported by the record. The trial court gave the following instruction:
 "In addition to the mitigating circumstances which I have just read to you, you may also consider any aspect of the Defendant's character or life, and consider anything else that you would in your ordinary affairs and common sense you [would] use in trying to make this important decision."
An instruction that does not inform the jury that it may use any evidence for purposes of mitigation is error.Whisenhant v. State, 482 So.2d 1225 (Ala.Cr.App. 1982), aff'd in part and remanded with directions,482 So.2d 1241 (Ala. 1983). However, the above excerpt clearly shows that the trial court correctly instructed the jury that it could consider any evidence presented for purposes of showing mitigation.
The appellant next contends that the trial court did not define or explain the purpose of mitigating circumstances nor did the court explain the weighing process. We observe that there was no objection to this at trial. Thus, we must evaluate the error under the plain error doctrine. The trial court gave the following instructions:
 "Ladies and gentlemen, the guilt of the Defendant is, of course, no longer an issue. It now becomes your duty to determine whether or not you should sentence the Defendant to death by electrocution or to life without the possibility of parole. In making that decision, the law says that you should consider the aggravating and the mitigating circumstances.
 "An aggravating circumstance is a circumstance which indicates or tends to indicate that the Defendant should be sentenced to death.
 "A mitigating circumstance is a circumstance which indicates or tends to indicate that the Defendant should be sentenced to life without the possibility of parole.
 "You base your verdict on the evidence that you heard in the trial in chief in making that decision and determining whether or not an aggravating circumstance exists or mitigating circumstances exist, you would consider the evidence plus the evidence that you heard in the sentencing phase.
". . . .
 "The law in this State recognizes that it is possible in at least some circumstances that one or a few aggravating circumstances might outweigh a larger number of mitigating circumstances. It also recognizes that it is possible that a few mitigating circumstances may outweigh a greater number of aggravating circumstances; but you must determine from the evidence what the punishment of the Defendant should be."
The trial court's instructions to the jury explained the aggravating circumstances that the state relied upon, listed the statutory mitigating circumstances that the appellant relied upon, told the jury that it could consider any evidence in mitigation, and instructed the jury about weighing the aggravating and the mitigating factors. The court's instructions were sufficient. See Colquitt, Death PenaltyLaws, 33 Ala. L.Rev. 213, 322 (1982), and cases cited therein. See also § 13A-5-48, Code of Alabama 1975.
No plain error occurred here.
The appellant also contends that the jury was not instructed on the burden *Page 532 
of proof necessary to sentence the appellant to death. As this court has stated:
 " ' "While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, . . . the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party." ' "
Williams v. State, 601 So.2d at 1083; quotingRutledge v. State, 523 So.2d 1087, 1111-12
(Ala.Cr.App. 1987), rev'd on other grounds, 523 So.2d 1118
(Ala. 1988). Such an instruction was not necessary because aggravating circumstances do not have to be proven to outweigh mitigating circumstances by a "reasonable doubt." SeeWilliams v. State, 601 So.2d at 1083.
The appellant further maintains that the trial court never instructed the jury that it could sentence the appellant to life without the possibility of parole. However, this contention is unsupported by the record: the trial court in two instances directed the jury that it could sentence the appellant to life without parole.
The appellant raises numerous other objections about the trial court's instructions in the guilt phase. We find no error in any of the instructions. The court's instructions do not violate Caldwell v. Mississippi, 472 U.S. 320,105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), simply because they state that the jury's verdict is an advisory one. (Section 13A-5-46
states that the jury's verdict is an advisory verdict.)
Furthermore, the instruction that one aggravating circumstance had been proven because the appellant was found guilty of capital murder is not error. "This 'overlap' is constitutionally permissible. '[T]he fact that the aggravating circumstance duplicated one of the elements of the crime does not make this sentence constitutionally infirm.' " White v.State, 587 So.2d 1218 (Ala.Cr.App. 1990), aff'd,587 So.2d 1236 (Ala. 1991), quoting Lowenfield v. Phelps,484 U.S. 231, 246, 108 S.Ct. 546, 555, 98 L.Ed.2d 568 (1988). See also Williams v. State, 601 So.2d 1062 (Ala.Cr.App. 1991); Pierce v. State, 576 So.2d 236 (Ala.Cr.App. 1990), cert. denied, 576 So.2d 258 (Ala. 1991). We have examined the other issues raised by the appellant in footnotes in his brief and have found no error.
 XII
The appellant further argues that the trial court erred in sending the jury back after it returned with a vote of 9 for death and 3 for life without parole.
The record reflects that the trial court instructed the jury pursuant to § 13A-5-46(f), that in order to return a verdict for death the vote had to be 10 to 2 and that in order to return a verdict for life without parole the vote had to be at least 7 to 5. After the jury returned and stated that their vote was 9 to 3 for death, the state objected citing §13A-5-46 and stated that the verdict did not conform with the statute and was, therefore, incorrect. The trial court then sent the jury back to deliberate, and several hours later the jury returned with a vote of 11 to 1 for death. We believe no error occurred here for the following reasons:
As Judge Bowen stated in Kuenzel, supra:
 "[I]t does appear that the first verdict of the jury was not proper under § 13A-5-46(f), which provides:
 " 'The decision of the jury to return an advisory verdict recommending a sentence of life imprisonment without parole must be based on a vote of a majority of the jurors. The decision of the jury to recommend a sentence of death must be based on a vote of at least ten jurors. The verdict of the jury must be in writing and must specify the vote.'
 "The jury's first verdict was not responsive to the instructions of the trial judge or to the requirements of law.
 " 'Nothing seems better settled than that it is the duty of the court to look after the form and substance of the verdict of the jury, so as to prevent an unintelligible or insufficient verdict from passing into the records of the court.' Martin v. State, 29 Ala. App. 395, 396, *Page 533 196 So. 753, 753-54 (1940). Accord, Bentley v. State, 20 Ala. App. 635, 104 So. 679 (1925). The instructions of the trial judge sending the jury back for further deliberations did not constitute a directed verdict or deprive the defendant of the 'leniency of the jury.' United States v. Walker, 456 F.2d 1037, 1039 (5th Cir. 1972). Where the verdict of the jury is not responsive to the instructions of the trial judge and the requirements of the law, the trial judge has a duty to reject that improper verdict and require the jury to resume its deliberations. Doughty v. State, 228 Ala. 568, 570, 154 So. 778, 779-80 (1934)."
577 So.2d at 524.
There was no evidence in the record that the trial court coerced the jury into returning a verdict. When the trial court realized that the verdict did not comport with the statute, the court sent the jury back for further deliberations. No error exists here.
 XIII
The appellant further argues that the trial court's sentencing order was deficient because it failed to state that the court had considered the nonstatutory mitigating circumstances and also because it showed that the court had considered inadmissible parts of a presentence report. The trial court's findings state the following regarding mitigating circumstances:
 "In compliance with the statute, the Court finds the following with respect to mitigating circumstances:
 "(1) The Defendant has no significant history of prior criminal activity within the meaning of Section 13A-5-51(1); therefore, this mitigating circumstance does exist and is considered;
 "(2) There was no evidence that the capital offense was committed while the Defendant was under the influence of extreme mental or emotional disturbance; therefore, this mitigating circumstance does not exist and is not considered;
 "(3) The victim was not a participant in Defendant's conduct, nor did he consent to it; therefore, this mitigating circumstance does not exist and is not considered;
 "(4) The Defendant was not an accomplice in the capital offense committed by another person, and his participation was not relatively minor. Although he had an accomplice for the commission of the robbery, the Defendant himself was the one who committed the murder of the intentional killing type; therefore, this mitigating circumstance does not exist and is not considered;
 "(5) There was no evidence that the Defendant acted under extreme duress or under the substantial domination of another person; therefore, this mitigating circumstance does not exist and is not considered;
 "(6) The capacity of the Defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was not substantially impaired; therefore, this mitigating circumstance does not exist and is not considered;
 "(7) The Court finds that the Defendant was sixteen years of age at the time of the commission of the crime, although he was 37 days from his 17th birthday. The Court does find that the age of the Defendant at the time of the crime as a mitigating circumstance, does exist, and is considered by the Court.
 "The Court finds no non-statutory mitigating circumstances."
(Emphasis added.)
The record shows that the trial court, after considering the evidence presented, found that no non-statutory mitigating circumstances applied to the facts of this case. The court also found that the statutory mitigating circumstances that applied to the appellant's case were (1) that he had no significant history of prior criminal conduct and (2) that he was 16 at the time of the offense. See § 13A-5-51(1) and (7). *Page 534 
The court's findings are supported by the record.
The appellant also contends that the trial court sentenced him to death after considering a presentence report that included hearsay and a psychological evaluation that contained an interview with the appellant and his probation officer.
The issues raised by the appellant concerning hearsay contained in the presentence report have been addressed by this court in Williams v. State, 601 So.2d 1062
(Ala.Cr.App. 1991). We stated:
 "Initially, we recognize the important function that the presentence report serves. Section 13A-5-47(b) specifically provides for the preparation of presentence reports. 'A presentence report is recognized as a valuable sentencing aid.' Colquitt, Death Penalty Law, 33 Ala.L.Rev. 213, 330 (1982).
". . . .
 " ' "Courts are permitted to consider hearsay testimony at sentencing. . . . While hearsay evidence may be considered in sentencing, due process requires both that the defendant be given an opportunity to refute it and that it bear minimal indicia of reliability. . . . These protections apply not just to hearsay testimony but also to any information presented at sentencing. . . . When, as in this case, the defendant claims that his due process rights were violated by the sentencing court's reliance on materially false information, the defendant must establish not only that the disputed information is materially false or unreliable, but also that the sentencing judge relied on the information."
 " 'United States v. Giltner, 889 F.2d 1004, 1007 (11th Cir. 1989). A sentencing judge may consider hearsay evidence so long as the defendant had a fair opportunity at rebuttal. Smiley v. State, 435 So.2d 202, 206
(Ala.Cr.App. 1983), affirmed in part, reversed in part on other grounds, 399 So.2d 873 (Ala. 1979).
 " 'In Thompson [v. State], 503 So.2d [871,] at 880 [Ala.Cr.App. 1986], this Court rejected the argument that the presentence report was inadmissible at the sentence hearing because, among other things, it "included hearsay . . . [and] the summary of the crime was prejudicial":
 " ' "It is clear to this court that the report is entirely consistent with Alabama's capital murder statute regarding evidence to be considered in sentencing. Section 13A-5-45(b), Code states, '[a]ny evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements." Further, the report itself is an out-of-court statement and is entirely hearsay. However, it is admissible under § 13A-5-47
Code of Alabama, being specifically called for consideration by the trial court."
" ' ". . . ."
" 'Thompson, 503 So.2d at 880.' "
Williams v. State, 601 So.2d at 1085-86; quotingKuenzel, 577 So.2d at 528-29.
The appellant also contends that the statement he made that was contained in the presentence report should not have been admitted because he was not given his Miranda rights prior to making the statement. A review of the statement contained in the report and the testimony of the appellant at trial shows that the information in both are virtually the same. This same issue was raised in Haney, supra. As Judge Patterson stated in Haney:
 "We have reviewed the statement and, upon comparing it with appellant's testimony at trial, we find the facts alleged in the statement to be practically identical to [his] testimony at trial. For this reason, we fail to see how the inclusion of this information in the presentence statement has harmed appellant. [His] version of the crimes and [his] reasons for participating in them are the same in both instances. The facts in the statement were available to the trial court from other evidence in the record. We *Page 535 
find that the inclusion of the statement in the presentence report was harmless. See Thompson v. State, 503 So.2d 871 (Ala.Cr.App. 1986)."
603 So.2d at 384.
Furthermore, "The presentence report was prepared for the judge's benefit; it was not shown to the jury. The trial judge evaluated the material in the report, considered the jury's recommendation, and sentenced the appellant to death. His findings are clearly substantiated by the record."Henderson v. State, 583 So.2d 276, 303 (Ala.Cr.App. 1990), aff'd, 583 So.2d 305 (Ala. 1991).
 XIV
Last, as provided by § 13A-5-53, Code of Alabama 1975, we are required to address the propriety of appellant's conviction and death sentence. The appellant was indicted and charged with murder made capital because it was committed during the course of a robbery in the first degree. Section 13A-5-40(a)(2), Code of Alabama 1975.
The record reflects that the appellant's death sentence was not the result of the influence of passion, prejudice, or any other arbitrary factor. Section 13A-5-53(b)(1), Code of Alabama 1975.
The trial court reviewed the aggravating and mitigating circumstances and found that the aggravating circumstances outweighed the mitigating circumstances. The trial court's findings reflect that it reviewed the statutory and nonstatutory mitigating circumstances and found that the mitigating circumstances were 1) that the appellant had no significant history of prior criminal conduct, and 2) that he was 16 years old at the time of the offense. The trial court found that the aggravating circumstance was the fact that the murder was committed during the course of a robbery. Section13A-5-40(a)(2). The trial court's findings show that it weighed the aggravating and the mitigating circumstances and correctly sentenced the appellant to death. The trial court's decision is supported by the record, and this court agrees with the trial court's findings.
As further required by § 13A-5-53, this court must independently weigh the aggravating and the mitigating circumstances to determine the propriety of the appellant's sentence to death. Section 13A-5-53(b)(2), Code of Alabama 1975. We have done our own weighing of the aggravating and the mitigating circumstances and have found that the appellant's death sentence was the appropriate sentence in this case.
As § 13A-5-53(b)(3) provides and as the appellant argues in his brief, we must address whether the appellant's sentence was disproportionate or excessive to the sentences imposed in similar cases. The appellant maintains that because he was 16 at the time of the offense — he was 37 days away from his 17th birthday — he should not be sentenced to death. As a majority of the United States Supreme Court stated inStanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969,106 L.Ed.2d 306 (1989):
 "We discern neither a historical nor a modern societal consensus forbidding the imposition of capital punishment on any person who murders at 16 or 17 years of age. Accordingly, we conclude that such punishment does not offend the Eighth Amendment's prohibition against cruel and unusual punishment."
A sentence of death to a defendant who is 16 at the time of the murder is not unconstitutional because of the individual's age. Nor was the appellant's sentence disproportionate to the crime committed. " 'In Beck [v. State, 396 So.2d 645
(Ala. 1981),] the Alabama Supreme Court noted that of the 50 cases it studied, 33, or 66%, were robbery-intentional killing cases.' " Williams v. State, [Ms. 89-633, September 20, 1991], 1991 WL 197836, * 9 (Ala.Cr.App. 1991), quoting Colquitt, Death Penalty Laws, 33 Ala.L.Rev. 213, 225 (1982). For other cases in which a death sentence has been upheld when the murder was committed during the course of a robbery see Williams, 1991 WL 197836;McMillian, supra; Williams, 601 So.2d 1062;Kuenzel, supra; Brownlee v. State,545 So.2d 151 (Ala.Cr.App. 1988), aff'd, *Page 536 545 So.2d 166 (Ala.), cert. denied, 493 U.S. 874, 110 S.Ct. 208,107 L.Ed.2d 161 (1989).
Last, we have searched the record for any error that would have adversely affected the appellant's substantial rights and have found none. Rule 45A, A.R.App.P.
The appellant's conviction and death sentence are due to be, and they are hereby, affirmed.
ORIGINAL OPINION WITHDRAWN, OPINION SUBSTITUTED; APPELLANT'S APPLICATION FOR REHEARING OVERRULED. AFFIRMED.
All the Judges concur.
[1] The list of factors included herein is not exhaustive of those which may be considered. Harrell v. State,555 So.2d 263 (Ala. 1989). Nor is it a comprehensive list of those factors set forth in Ex parte Branch. Also, the citations included in Branch, have been omitted.
[2] Jackson v. State, 557 So.2d 855 (Ala.Cr.App. 1990); Madison v. State, 545 So.2d 94 (Ala.Cr.App. 1987).