MICHAEL DOMINGUES, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 29896

July 31, 1998                                    961 P.2d 1279

[Rehearing denied December 1, 1998]

*Morgan D. Harris,* Public Defender, and *Robert L. Miller* and *Phillip J. Kohn,* Deputy Public Defenders, Clark County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney and *James Tufteland,* Chief Deputy District Attorney and *Christopher J. Laurent,* Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, YOUNG, J.:

This case raises the single issue of whether NRS 176.025 is superseded by an international treaty ratified by the United States, which prohibits the execution of individuals who committed capital offenses while under the age of eighteen. NRS 176.025 allows imposition of the death penalty on a defendant who was sixteen years old or older at the time that the capital offense was committed.

### FACTS

On October 22, 1993, sixteen-year-old Michael Domingues murdered a woman and her four-year-old son in the victims' home. In August 1994, a jury found Domingues guilty of one count of burglary, one count of robbery with the use of a deadly weapon, one count of first degree murder, and one count of first degree murder with the use of a deadly weapon. At seventeen years of age, Domingues was sentenced to death for each of the two murder convictions. On May 30, 1996, this court upheld Domingues' convictions and sentence. Domingues v. State, 112 Nev. 683, 917 P.2d 1364 (1996), *cert. denied,* 519 U.S. 968, 117 S. Ct. 396 (1996).[1]

On November 7, 1996, Domingues filed a motion for correction of illegal sentence, arguing that "execution of a juvenile offender violates an international treaty ratified by the United States and violates customary international law." Article 6, para-

---

[1] According to the State, Domingues' petition for writ of certiorari to the United States Supreme Court raised the issues of whether this court's statutory review of his sentence violated due process and whether this court's review of his sentence violated the Eighth Amendment.

graph 5 of the International Covenant on Civil and Political Rights (ICCPR) provides that: "Sentence of death shall not be imposed for crimes committed by persons below eighteen years of age and shall not be carried out on pregnant women." ICCPR, Dec. 19, 1966, art. 6, S. Treaty Doc. No. 95-2, 999 U.N.T.S. 171, 175.

In 1992, the United States Senate ratified the ICCPR, with the following pertinent reservation and declaration:

> That the United States reserves the right, subject to its Constitutional constraints, to impose capital punishment on any person (other than a pregnant woman) duly convicted under existing or future laws permitting the imposition of capital punishment, *including such punishment for crimes committed by persons below eighteen years of age.*
>
> . . . .
>
> That the United States declares that the provisions of Articles 1 through 27 of the [ICCPR] *are not self-executing.*

138 Cong. Rec. S4781-01, S4783-84 (daily ed. April 2, 1992) (emphasis added).

At a hearing on Domingues' motion to correct the illegal sentence, the district court concluded that the sentence was not facially illegal and, thus, it lacked jurisdiction to correct the sentence; on March 7, 1997, the district court issued an order denying Domingues' motion. Domingues appeals from this order.

## DISCUSSION

Domingues contends that pursuant to the ICCPR, imposition of the death sentence on one who committed a capital offense while under the age of eighteen is illegal. ICCPR, 999 U.N.T.S. at 175. Although the United States Senate ratified the ICCPR with a reservation allowing juvenile offenders to be sentenced to death, Domingues asserts that this reservation was invalid and thus this capital sentencing prohibition set forth in the treaty is the supreme law of the land. *See* 138 Cong. Rec. S4781-01, S4783-84 (daily ed. April 2, 1992). Domingues contends that his death sentence, imposed for crimes he committed when he was sixteen years old, is thereby facially illegal. *See* Edwards v. State, 112 Nev. 704, 708, 918 P.2d 321, 324 (1996) (recognizing the inherent power of the district court to correct a facially illegal sentence); Anderson v. State, 90 Nev. 385, 528 P.2d 1023 (1974). We disagree.

We conclude that the Senate's express reservation of the United States' right to impose a penalty of death on juvenile offenders negates Domingues' claim that he was illegally sentenced. Many of our sister jurisdictions have laws authorizing the death penalty for criminal offenders under the age of eighteen, and such laws have withstood Constitutional scrutiny. *See* Stanford v. Kentucky,

492 U.S. 361 (1989); Ved P. Nanda, *The United States Reservation to the Ban on the Death Penalty for Juvenile Offenders: An Appraisal Under the International Covenant on Civil and Political Rights,* 42 DePaul L. Rev. 1311, 1312-13 (1995).

NRS 176.025 provides that the death penalty shall not be imposed upon individuals who were under sixteen years of age at the time that the offense was committed. Because Domingues was sixteen at the time he committed a capital offense, we conclude that the death penalty was legally imposed upon him. Accordingly, we affirm the decision of the district court denying Domingues' motion to correct the sentence.

SHEARING, J., and BLAKE, D. J., concur.[2]

SPRINGER, C. J., dissenting:

The International Covenant on Civil and Political Rights, to which the United States is a ''party,'' forbids imposing the death penalty on children under the age of eighteen. International treaties of this kind ordinarily become the ''supreme law of the land.'' Under the majority's interpretation of the treaty, the United States, at least with regard to executing children, is a ''party'' to the treaty, while at the same time rejecting one of its most vital terms. Under Nevada's interpretation of the treaty, the United States will be joining hands with such countries as Iran, Iraq, Bangladesh, Nigeria and Pakistan in approving death sentences for children. I withhold my approval of the court's judgment in this regard.

ROSE, J., dissenting:

Following a brief hearing, the district court summarily concluded that the death sentence was facially valid in spite of an international treaty signed by the United States which prohibits the execution of individuals who were under eighteen years of age when the crime was committed. I believe this complicated issue deserved a full hearing, evidentiary if necessary, on the effect of our nation's ratification of the ICCPR and the reservation by the United States Senate to that treaty's provision prohibiting the execution of anyone who committed a capital crime while under eighteen years of age.

The penultimate issue that the district court should have considered is whether the Senate's reservation was valid. Article 4(2) of the treaty states that there shall be no derogation from Article 6 which includes the prohibition on the execution of juvenile

---

[2]The Governor appointed the Honorable Archie E. Blake, Judge of the Third Judicial District Court, to sit in place of THE HONORABLE A. WILLIAM MAUPIN, Justice, who recused himself. Nev. Const. art. 6, § 4.

offenders. ICCPR, 999 U.N.T.S. at 174. Furthermore, there is authority to support the proposition that the Senate's reservation was invalid. *See, e.g.,* Restatement (Third) of the Foreign Relations Law of the United States § 313 (1987); Ved P. Nanda, *The United States Reservation to the Ban on the Death Penalty for Juvenile Offenders: An Appraisal Under the International Covenant on Civil and Political Rights,* 42 DePaul L. Rev. 1311, 1331-32 (1993).

If the reservation was not valid, then the district court should determine whether the United States is still a party to the treaty. If the reservation was a "sine qua non" of the acceptance of the whole treaty by the United States, then the United State's ratification of the treaty could be considered a nullity. *See* William A. Schabas, *Invalid Reservations to the International Covenant on Civil and Political Rights: Is the United States Still a Party?,* 21 Brook. J. Int'l L. 277, 318-19 (1995). But, if the United States has shown an intent to accept the treaty as a whole, the result could be that the United States is bound by all of the provisions of the treaty, notwithstanding the reservation. *Id.*

These are not easy questions and testimony about the international conduct of the United States concerning the subjects contained in the treaty, in addition to expert testimony on the effect of the Senate's reservation may be necessary. A federal court that deals with federal law on a daily basis might be better equipped to address these issues; however, the motion is before the state court and it should do its best to resolve the matter. Accordingly, I would reverse the district court's denial of Domingues' motion and remand the case for a full hearing on the effect of the ICCPR on Domingues' sentence.