770 So.2d 143 (2000)
Ex parte Marcus PRESSLEY.
(Re Marcus Pressley v. State.)
1981061.
Supreme Court of Alabama.
January 28, 2000.[*]
Modified on Denial of Rehearing April 7, 2000.
*144 John C. Robbins, Birmingham; and Dennis Jacobs, Birmingham, for petitioner.
Bill Pryor, atty. gen., and A. Vernon Barnett IV, asst. atty. gen., for respondent.
COOK, Justice.
In September 1997, in the Shelby Circuit Court, Marcus Pressley was convicted by a jury of the capital murder of John Burleson and Janice Littleton, murders committed during the course of a robbery. See § 13A-5-40(a)(2), Ala.Code 1975. He was sentenced to death. The Court of Criminal Appeals affirmed the conviction and sentence. See Pressley v. State, 770 So.2d 115 (Ala.Crim.App.1999), for a detailed statement of the pertinent facts. We granted certiorari review pursuant to Rule 39(c), Ala.R.App.P.
Pressley presents 25 issues for review; all of them were argued in the Court of Criminal Appeals and were thoroughly addressed by that court. We have carefully reviewed all the issues raised by Pressley. However, we will further address two issuesboth of which Pressley's counsel specifically addressed at oral argument: (1) Whether the trial court erred in denying Pressley's motions challenging the State's peremptory strikes against African-American and female veniremembers and (2) Whether international law prohibits the execution of offenders who committed their crimes before attaining the age of 18 years.
Pressley contends that the State engaged in purposeful racial and gender discrimination by removing 4 of 6 African-Americans from the venire and in using 18 of its 23 peremptory strikes to remove females from the venire. He argued the State's action violated the principles of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and J.E.B. v. Alabama, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994).
A trial court's ruling on a Batson objection is entitled to great deference, and we will not reverse the trial court's Batson ruling unless it is clearly erroneous. Ex parte Branch, 526 So.2d 609 (Ala. 1987). In Batson, supra, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the prosecution from exercising its peremptory strikes to remove African-Americans from an African-American defendant's jury solely on the basis of their race. 476 U.S. at 93, 106 S.Ct. 1712.
In Batson, the United States Supreme Court held:
"Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges `for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried, ... the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."
476 U.S. at 89, 106 S.Ct. 1712 (citations omitted).
The Court went on to outline the components of a defendant's prima facie case of racial discrimination:
"To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a *145 mind to discriminate.' Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the [veniremembers] from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination."
Batson, 476 U.S. at 96, 106 S.Ct. 1712 (citations omitted).
In Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991), the Batson principles were extended to apply to civil cases. The Batson principles were further extended in Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), when the United States Supreme Court held that they were also applicable to defense counsel in criminal trials. In White Consolidated Industries, Inc. v. American Liberty Insurance Co., 617 So.2d 657 (Ala.1993), we extended the Batson principles to the striking of white veniremembers. In J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), the United States Supreme Court extended the Batson principles to prohibit gender-based strikes. In Strauder v. West Virginia, 100 U.S. (10 Otto) 303, 25 L.Ed. 664 (1880), the Court held that racial discrimination in jury selection offends the Equal Protection Clause; however, it recognized that a defendant has no right to a jury composed in whole or in part of persons of his own race.
A defendant making a Batson challenge bears the burden of proving a prima facie case of purposeful or intentional discrimination and, in the absence of such proof, the prosecution is not required to state its reasons for its peremptory challenges. Ex parte Branch, 526 So.2d 609 (Ala.1987). Only when the defendant establishes facts and circumstances that raise an inference of discrimination must the State give its reasons for its peremptory strikes. Stokes v. State, 648 So.2d 1179, 1180 (Ala.Crim.App.1994).
The jury in Pressley's case consisted of nine women and three men, with one male alternate juror and one female alternate juror. There was one African-American on the jury and one African-American alternate juror. While the prosecution was exercising its peremptory strikes, the prosecutor pointed out that Pressley had used 7 of his 10 strikes to remove white males from the venire. Pressley replied by pointing out that the State had used 7 of its first 10 strikes to remove women. After the jury was struck, the State made a cross-Batson motion, arguing that Pressley had used 14 of his 22 strikes to remove white males from the jury, and in doing so, had unconstitutionally discriminated against white males. The State pointed out that only three males (25%) sat on the jury out of the 40% on the venire. Next, Pressley made a Batson motion, pointing out that the State had struck four African-Americans from the jury, with only one African-American actually sitting on the jury. Pressley made a second Batson motion, arguing that the State had used 18 of its 23 strikes to remove females from the jury. The trial court denied all motions, without finding that either party had made a prima facie showing of purposeful discrimination.
This Court has held that where the trial court has made no express finding of a prima facie case of intentional discrimination but the prosecution nonetheless explains its peremptory challenges, we will infer that the court made such a finding and will proceed directly to evaluate the prosecutor's explanations. See Hart v. State, 612 So.2d 520, 523-24 (Ala.Crim. App.1992); see Williams v. State, 548 So.2d 501 (Ala.Crim.App.1988), cert. denied, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989); Currin v. State, 535 So.2d 221 (Ala.Crim.App.), cert. denied, 535 So.2d 225 (Ala.1988). However, in this case we do not find that the prosecutor explained the reasons for the State's peremptory *146 strikes; therefore, we will consider the question whether Pressley made a prima facie showing of purposeful discrimination.
In Ex parte Branch, 526 So.2d 609 (Ala. 1987), we stated that the following terms illustrate the kinds of evidence a party can use to raise an inference of racial or gender discrimination when seeking to establish a prima facie case:
"1. Evidence that the `jurors in question share[d] only this one characteristictheir membership in the group [alleged to have been discriminated against]and that in all other respects they [were] as heterogenous as the community as a whole.'"
"2. A pattern of strikes against [members of one race or gender] on the particular venire."
"3. The past conduct of the state's attorney in using peremptory challenges to strike all members of [one race or gender] from the jury venire."
"4. The type and manner of the [prosecutor's] questions and statements during voir dire...."
"5. The type and manner of questions directed to the challenged juror, including a lack of questions or a lack of meaningful questions."
"6. Disparate treatment of members of the jury venire with the same characteristics, or who answer a question in the same or [a] similar manner...."
"7. Disparate examination of members of the venire...."
"8. Circumstantial evidence of intent may be proven by disparate impact where all or most of the challenges were used to strike [members of one race or gender] from the jury."
"9. The state used peremptory challenges to dismiss all or most [members of one race or gender]."
526 So.2d at 622-23.
Pressley supported his Batson objections by arguing that the State's use of its peremptory strikes "in itself" establishes a pattern of discriminatory striking of jurors and constitutes a prima facie case of discrimination; this prima facie case, he argues, shifted the burden to the State to offer reasons for the strikes. However, we do not find that Pressley supplied the trial court with any additional information indicating that the State engaged in a "pattern" of discriminatory striking of jurors. The following colloquy occurred:
"THE COURT: Well, let me ask this from the defendant's standpoint: Does the defendant have anything else to offer?
"MR. ROBBINS [defense counsel]: In support of our motion, Judge?
"THE COURT: Yes.
"MR. ROBBINS: Judge, we would need time, I guess, to sit down and look more closely at the information that we got from the questionnaire to offer as evidence to challenge these black jurors. So, I mean, I guess right nowI mean, if you want more from us than that
"THE COURT: No. I mean, just whatever y'all offer in support of your motions is what I need to take up right now. That's all. To make a prima facie case.

*147 "MR. ROBBINS: Dennis, you got anything?
"MR. JACOBS [defense counsel]: No.
"THE COURT: All right. As far as the State's motion is concerned, the Court is going to deny. As far as the defendant's motion is concerned, the Court is going to deny...."
(R. 1063-64.)
After reviewing the record, particularly the record of the voir dire examination of the venire, this Court is not persuaded that the trial court's ruling on Pressley's Batson motions was clearly erroneous. Pressley offered no evidence indicating that the African-American veniremembers shared only the characteristic of race and that the female veniremembers shared only the characteristic of gender; that anything in the type or manner of the State's statements or questions during the extensive voir dire indicated an intent to discriminate against African-American or female jurors; that there was a lack of meaningful voir dire questioning directed at the African-American or female jurors; or that the African-American or female jurors were treated differently. Furthermore, Pressley has offered no evidence indicating that the prosecutor had a history of using peremptory challenges in a manner that discriminated against African-American or female veniremembers. Standing alone, given the factual circumstances of this case, the fact that the State struck four of six African-Americans from the venire and used some of its peremptory strikes to remove females from the venire is insufficient to establish a prima facie showing of race and gender discrimination. We do not find that the number of strikes the State used to remove African-Americans, or the number it used to remove females, from the venire is sufficient to establish a prima facie case of race, or gender, discrimination. See Ex parte Trawick, 698 So.2d 162, 168 (Ala.1997).
Pressley also contends that the State's response to his Batson motions constitutes an admission of gender discrimination by the State. Specifically, Pressley argues that the State admits that it struck females from the venire to ensure that white males would be represented on the jury. We disagree.
After Pressley made his Batson motions, the State responded as follows:
"[Prosecutor]: But the comments regarding the male, female, white male, white female, the purpose of the State putting on the record the indication that the defendant was inwas violating Batson at that point is because the State is being forced into striking females because the defendant was excusing all the white males. If the State had excused any white males there would be no white males on the jury. We were forced the State was forced into excusing females because the defendant was excusing all the males."
(R. 1061.)
We do not interpret the State's response as an admission that it was violating Batson. It is clear from the State's crossBatson motion that the defendant, while making a Batson challenge, had at the same time used most of his peremptory challenges to remove white males. We grant great deference to the trial judge, who is on the scene and who can best judge the credibility of the participants and determine what actually occurred. Therefore, considering the record, we do not find that this statement amounts to an admission of discrimination by the State, nor do we believe that the defendant carried his burden of showing purposeful discrimination.
Pressley argues in his reply brief to this Court that the execution of a juvenile violates customary international law and international treaties ratified by the United States.[1] Initially, we note that this *148 issue was not raised before the trial court. However, because this case involves the death penalty, this Court, under Rule 39(k), Ala.R.App.P., will apply the "plain error" doctrine. Therefore, this Court is not barred from reviewing issues that were not raised in the trial court.
Pressley, who was 16 years old when he committed the capital offenses, contends that the imposition of the death sentence on him violates international law. See International Covenant on Civil and Political Rights (ICCPR), Dec. 19, 1966, 999 U.N.T.S. 175.[2]
The United States Senate ratified the ICCPR, with five reservations, five understandings, four declarations, and one proviso ("RUDs"). Reservation I(2) states:
"The United States reserves the right, subject to its Constitutional constraints, to impose capital punishment on any person (other than a pregnant woman) duly convicted under existing or future laws permitting the imposition of capital punishment, including such punishment for crimes committed by persons below 18 years of age.

". . . .
"That the United States declares that the provisions of Articles 1 through 27 of the [ICCPR] are not self-executing."[3]
138 Cong. Rec. S4781-01, S4783-84 (daily ed. April 2, 1992) (emphasis added).
Although the United States Senate ratified the ICCPR with a reservation that allows juvenile offenders to be sentenced to death, Pressley argues that this reservation is invalid because, he says, it is incompatible with the "object and purpose" of the treaty and is precluded by Article 4(2) of the ICCPR. See 138 Cong. Rec. S4781-01, S4783-84 (daily ed. April 2, 1992). Therefore, Pressley contends, his sentence of death is illegal.
We are not persuaded that Pressley has established that the Senate's express reservation of this nation's right to impose a penalty of death on juvenile offenders, in ratifying the ICCPR, is illegal.[4] Laws of other states authorizing the death penalty for criminal offenders under the age of 18 have withstood Constitutional scrutiny. See Stanford v. Kentucky, 492 U.S. 361, 109 S.Ct. 2969, 106 L.Ed.2d 306 (1989); Thompson v. Oklahoma, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988).
In Stanford v. Kentucky, the United States Supreme Court rejected the argument that international law should influence *149 rulings under the federal Constitution pertaining to the death penalty. In Stanford, Justice Scalia stated in a plurality opinion joined by Chief Justice Rehnquist and Justices White and Kennedy, that the execution of a defendant who was "16 or 17 years of age" at the time of the commission of a capital offense "does not offend the Eighth Amendment's prohibition against cruel and unusual punishment." 492 U.S. at 380, 109 S.Ct. 2969. In a dissenting opinion, Justice Brennan, joined by Justices Marshall, Blackmun, and Stevens and relying on amicus briefs filed by such groups as Amnesty International, stated that "[w]ithin the world community, the imposition of the death penalty for juvenile crimes appears to be overwhelmingly disapproved." 492 U.S. at 390, 109 S.Ct. 2969.
In Stanford, Justice O'Connor wrote a concurring-in-part opinion explicitly distinguishing her views in Thompson v. Oklahoma, 487 U.S. 815, 857-58, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988), from her views in Stanford:
"Last Term, in Thompson v. Oklahoma (opinion concurring in judgment), I expressed the view that a criminal defendant who would have been tried as a juvenile under state law, but for the granting of a petition waiving juvenile court jurisdiction, may only be executed for a capital offense if the State's capital punishment statute specifies a minimum age at which the commission of a capital crime can lead to an offender's execution and the defendant had reached that minimum age at the time the crime was committed. As a threshold matter, I indicated that such specificity is not necessary to avoid constitutional problems if it is clear that no national consensus forbids the imposition of capital punishment for crimes committed at such an age. Id. [487 U.S.] at 857, 108 S.Ct. at 2710-2711. Applying this two-part standard in Thompson, I concluded that Oklahoma's imposition of a death sentence on an individual who was 15 years old at the time he committed a capital offense should be set aside. Applying the same standard today, I conclude that the death sentences for capital murder imposed by Missouri and Kentucky on petitioners Wilkins and Stanford respectively should not be set aside because it is sufficiently clear that no national consensus forbids the imposition of capital punishment on 16- or 17-year-old capital murderers."
Stanford, 492 U.S. at 380, 109 S.Ct. 2969 (citations omitted).
Unlike the appellant in Thompson, who was 15 years old when he committed the capital offense, Pressley was 16 years old when he committed his capital offenses. Furthermore, Alabama's statutory scheme mandates that a person 16 years old charged with a capital offense be tried as an adult, and that scheme is similar to the statutory scheme that was in effect in Oklahoma when Thompson was decided. Because Pressley was 16 when he committed the capital offenses, we conclude that the death penalty was legally imposed upon him.[5]
This Court has carefully reviewed the record and the briefs in this case, the opinion of the Court of Criminal Appeals, the oral argument made by Pressley's *150 counsel, and all of the other matters raised by Pressley. In compliance with Rule 39(k), Ala. R.App. P., we have searched the record of the guilt phase and the record of the sentencing phase of Pressley's trial for "plain error," i.e., error that is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. See Ex parte Taylor, 666 So.2d 73 (Ala.1995). We find no error, "plain" or otherwise, that requires us to reverse the Court of Criminal Appeals' judgment affirming Pressley's convictions and his sentence. That judgment is therefore affirmed.
AFFIRMED.
HOOPER, C.J., and MADDOX, SEE, LYONS, and JOHNSTONE, JJ., concur.
HOUSTON, J., concurs in the result.
BROWN, J., recuses herself.[**]
HOUSTON, Justice (concurring in the result).
Article VI, paragraph 2, of the Constitution of the United States provides:
"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."
The United States Supreme Court has interpreted this paragraph to mean what it says. Zschernig v. Miller, 389 U.S. 429, 440-41, 88 S.Ct. 664, 19 L.Ed.2d 683 (1968); United States v. Pink, 315 U.S. 203, 230-31, 62 S.Ct. 552, 86 L.Ed. 796 (1942) ("state law must yield when it is inconsistent with or impairs the policy or provisions of a treaty").
On September 8, 1992, the United States ratified the International Covenant on Civil and Political Rights ("ICCPR"); Article 6(5) of this treaty provides: "Sentence of death shall not be imposed for crimes committed by persons below eighteen years of age and shall not be carried out on pregnant women."
Marcus Pressley was 16 years old when he committed the horrible crimes for which he has been sentenced to death.
The majority opinion indicates that the Justices concurring therein are satisfied that the United States Senate Reservation 1(2) relieves state justices from their constitutional obligation to be bound by this treaty.
The Senate Reservation begins with a clause reading: "The United States reserves the right...." This clause uses a singular verb. The following statement appears in Merriam Webster Dictionary of English Usage, p. 929 (1989): "[A]s the United States came to be thought of as a single entity, the singular verb came more and more into use." The Senate's reservation reads:
"The United States reserves the right, subject to its [singular pronoun] constitutional constraints, to impose capital punishment on any person (other than a pregnant woman) duly convicted under existing or future laws permitting the imposition of capital punishment, including such punishment for crimes committed by persons below 18 years of age."
Federalism is alive and well. The United States Constitution binds me as a Supreme Court Justice of the State of Alabama to abide by the ICCPR, Article 6(5), and not to impose the sentence of death on Pressley for the crimes committed when he was 16 years of age. I am not persuaded that the Senate's reservation, if not invalid for other reasons, frees me as a state justice, as opposed to a federal justice *151 or judge, from the treaty's restriction against the imposition of a sentence of death for a crime committed by a person below the age of 18 years.
In Domingues v. Nevada, 114 Nev. 783, 961 P.2d 1279 (1998), in a 3-2 decision, the Supreme Court of Nevada rejected the defendant's contention that the ICCPR prohibited the imposition of the death sentence for crimes committed by a 16-year-old. The Supreme Court of the United States denied the defendant's petition for certiorari review on November 1, 1999. 528 U.S. 963, 120 S.Ct. 396, 145 L.Ed.2d 309 (1999). I am aware that an order of the Supreme Court of the United States denying a petition for certiorari review is not to be taken as an expression of an opinion on the merits of the case. Maryland v. Baltimore Radio Show, 338 U.S. 912, 70 S.Ct. 252, 94 L.Ed. 562 (1950); Carpenter v. Gomez, 516 U.S. 981, 116 S.Ct. 488, 133 L.Ed.2d 415 (1995); however, I am also aware that when a petition raises a substantial question, the Court sometimes "points out those concerns which, although unrelated to the merits, justify the decision not to grant review." Carpenter v. Gomez, 516 U.S. at 981, 116 S.Ct. 488. How much more substantial can a question be than whether a person can be executed for a crime committed in his youth, when the ICCPR, a treaty to which the United States is a signatory, makes such an execution facially illegal? However, the Court did not point out concerns justifying the decision not to grant review that were unrelated to the merits. Therefore, I do not believe it is a quantum leap for me to assume that certiorari review was denied based on the merits of the case.
Before I voted in this case, knowing that the State of Alabama is going to be named in a list with such countries as Iran, Iraq, Bangladesh, Nigeria, and Pakistan, as jurisdictions approving death sentences for persons under age 18, I reread Clarence Darrow's summation in the Leopold and Loeb case. Attorney for the Damned: Clarence Darrow in His Own Words, pp. 16-88, (Simon and Schuster, Inc. 1957.) Like Darrow, I wonder if
"[w]e are turning our faces backward toward the barbarism which once possessed the world. If Your Honor can hang a boy of eighteen, some other judge can hang him at seventeen, or sixteen, or fourteen. Someday, if there is any such thing as progress in the world, if there is any spirit of humanity that is working in the hearts of men, someday men would look back upon this as a barbarous age which deliberately set itself in the way of progress, humanity and sympathy, and committed an unforgivable act."
Attorney for the Damned, p. 82.
Even though I am not persuaded that the Senate's resolution removes the ICCPR prohibition in State courts, I infer that the United States Supreme Court indicated that it did. I concur in the result, and I pray that in doing so I am not committing "an unforgivable act."
NOTES
[*] Note from the reporter of decisions: This opinion was released by the Supreme Court under the date January 28, 2000. The case was actually released to the public on January 27, 2000.
[1] Article VI of the United States Constitution provides:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding."
[2] The United States ratified the ICCPR in 1992. Article 6(5) states:

"Sentence of death shall not be imposed for crimes committed by persons below eighteen years of age and shall not be carried out on pregnant women."
See also Convention on the Rights of the Child, Jan. 26, 1990, art. 37, 28 ILM 1448 (1989) (signed by the United States in 1996).
[3] A treaty is self-executing and creates an individual right of action when it expressly or impliedly creates that right. However, the United States Senate declared that the ICCPR was not self-executing, stating that the declaration was to "clarify that the Covenant will not create a private cause of action in U.S. Courts." "International Covenant on Civil And Political Rights," S. Exec. Rept., No. 102-23, 102d Congress, 2d Session, 15 (1992).
[4] Other international agreements cited by Pressley, such as the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, U.N.G.A. Res. 39/46 (United Nations General Resolution), and International Convention in the Elimination of all Forms of Racial Discrimination, 660 U.N.T.S. 195 (United Nations Resolution), were ratified by the United States Senate with RUDs that specifically stated that international law does not prohibit the imposition of the death sentence on juveniles. See 136 Cong. Rec. S 17, 491-92 (1990); Louis Henkin, ed. Comment, U.S. Ratification of Human Rights Conventions: The Ghost of Senator Bricker, 89 Am. J. Int'l L. 341 (1995).
[5] In Ex parte Hart, supra, 612 So.2d at 537, we affirmed the Court of Criminal Appeals' conclusion that the imposition of the death penalty on a defendant who 16 years old at the time of the crime is constitutional. See 612 So.2d at 535.

Additionally, United States Court of Appeals for the Fifth Circuit rejected the same argument in Celestine v. Butler, 823 F.2d 74 (5th Cir.), cert. denied, 483 U.S. 1036, 108 S.Ct. 6, 97 L.Ed.2d 796 (1987):
"How these issues are to be determined is settled under American constitutional law. Not a single argument is advanced directed at proving that the United States in these international agreements agreed to provide additional factors for decision or to modify the decisional factors required by the United States Constitution as interpreted by the Supreme Court. The argument is ingenious but content is wholly lacking."
823 F.2d at 79-80.
[**] Justice Brown was a member of the Court of Criminal Appeals when that court considered this case.