Rel: December 22, 2023

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

## SC-2023-0733

_____

## Ex parte James Lavondria Tunstall

## PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS

## (In re: James Lavondria Tunstall

## v.

## State of Alabama)

## (Mobile Circuit Court: CC-19-2458; Court of Criminal Appeals: CR-2022-0792)

STEWART, Justice.

WRIT DENIED. NO OPINION.

Shaw, Wise, Bryan, Sellers, Mendheim, and Mitchell, JJ., concur.

Parker, C.J., dissents, with opinion, which Cook, J., joins.

PARKER, Chief Justice (dissenting).

I respectfully dissent. According to the facts before us, James Lavondria Tunstall was at his grandmother's house with his girlfriend, Trenell Evans. When Tunstall went outside to take Evans to get breakfast, she told him that Jermond Perryman had just walked by and called her a "b*tch." Tunstall and Evans walked to a grocery store together to pick up breakfast immediately afterward. On the way, they passed Perryman and another man. Evans asked if Perryman had called her a "b*tch," which Perryman denied. Tunstall and Evans continued toward the store. As Tunstall and Evans were coming back from getting breakfast at the store, Tunstall saw three people, including Perryman, looking at his grandmother's house. Tunstall testified that he went back into the house. From inside the house, he could see the three men walking toward the house. He said that he then went back outside and that Perryman began shooting at him. Tunstall testified that he returned fire with a .22-caliber rifle. During the exchange of gunfire, Perryman was killed.

Tunstall was indicted in the Mobile Circuit Court on one count of intentional murder. Tunstall alleged that Perryman had fired first, and

that Tunstall had returned fire to defend himself. Evidence at trial indicated that both Perryman and Tunstall had fired at each other. The evidence did not conclusively establish who had fired first. But the one eyewitness to the incident (other than Tunstall) indicated that Perryman had fired first. The record before this Court indicates that no evidence was presented by the State tending to show that Tunstall had begun the firing.

At the close of the evidence, Tunstall requested a jury instruction on self-defense. The State requested a jury instruction on the lesser-included offense of heat-of-passion manslaughter. Tunstall objected, arguing that Alabama law did not allow for a heat-of-passion-manslaughter instruction in this case. The circuit court decided to instruct the jury on both self-defense and heat-of-passion manslaughter.

The jury convicted Tunstall of heat-of-passion manslaughter. The circuit court sentenced him to 15 years and 1 day of imprisonment. Tunstall appealed to the Court of Criminal Appeals, which affirmed his conviction by unpublished memorandum, see Tunstall v. State (No. CR-2022-0792, June 16, 2023), ____ So. 3d ____ (Ala. Crim. App. 2023) (table). He now petitions this Court for certiorari review. Specifically, Tunstall

claims that the Court of Criminal Appeals' affirmance of the circuit court's judgment conflicts with three prior decisions of that court and one prior decision of this Court. All four of those cases address the propriety of jury instructions on self-defense or lesser-included offenses.

As I see it, there are two factual possibilities presented by the Court of Criminal Appeals' decision: either Tunstall fired first or Perryman fired first. In either case, the decision below affirming Tunstall's conviction appears to conflict with prior decisions of this Court and the Court of Criminal Appeals.

If Tunstall fired first, then the question is what provocation he had to do so. The facts before us indicate that it could have been a verbal exchange between Tunstall and Perryman after Perryman allegedly called Tunstall's girlfriend a "b*tch." But if that verbal exchange was the provocation for Tunstall's firing, it would be insufficient to reduce Tunstall's crime to heat-of-passion manslaughter. This Court and the Court of Criminal Appeals have held that "[m]ere words, no matter how insulting, never reduce a homicide to manslaughter." Mitchell v. State, 60 Ala. 26, 32 (1877); Fuller v. State, 231 So. 3d 1207, 1218-19 (Ala. Crim. App. 2015). Therefore, if Tunstall unlawfully fired first, his crime could

4

not have been heat-of-passion manslaughter, but only intentional murder.

The State argued for the heat-of-passion-manslaughter instruction based on the verbal exchange. The circuit court granted the State's request for a heat-of-passion-manslaughter instruction because of "evidence adduced or solicited by whoever it was that this exchange happened …." It is hard to understand what exactly the circuit court could have meant by "this exchange," if not the verbal exchange. The Court of Criminal Appeals, in its unpublished memorandum, grappled with this ambiguity and seemed to suggest that by "exchange" the circuit court could have meant the exchange of gunfire. But if Tunstall fired first, then that interpretation is untenable. An exchange of gunfire that Tunstall himself began could not possibly have provoked him to begin it. Tunstall could have been provoked by the exchange of gunfire only if Perryman fired first. Therefore, either the heat-of-passion-manslaughter instruction conflicts with Mitchell and Fuller or Perryman fired first.[1]

---

[1]I note again that the Court of Criminal Appeals cited no evidence in its unpublished memorandum tending to show that Tunstall fired first. The evidence it cited in its unpublished memorandum uniformly indicates that Perryman fired first. I address the theory that Tunstall fired first because it could have been the theory under which the circuit

If Perryman fired first, then the source of Tunstall's "heat of passion" only could have been the gunshots from Perryman. This would mean that the Court of Criminal Appeals' decision does not conflict with <u>Mitchell</u> and <u>Fuller</u>; but then such a ruling would seriously conflict with the law of self-defense in Alabama and two other prior decisions of the Court of Criminal Appeals.

The authority cited by the Court of Criminal Appeals on this point deals with "'"'"blow[s] given, or apparently about to be given,"'"'" not "gunshots fired, or apparently about to be fired." <u>Williams v. State</u>, 675 So. 2d 537, 541 (Ala. Crim. App. 1996) (emphasis and citations omitted). In other words, this authority deals with the use of deadly force in response to the use of <u>nondeadly</u> force. Here, Tunstall used deadly force in response to the use of <u>deadly</u> force. Under Alabama law, therefore, Tunstall was <u>presumed</u> to be justified in using deadly physical force in self-defense. See § 13A-3-23(a)(1), Ala. Code 1975 ("A person … <u>is legally presumed to be justified in using deadly physical force in self-defense</u> …

_____

court allowed the heat-of-passion-manslaughter instruction, although the Court of Criminal Appeals seems to have affirmed the circuit court's judgment on other grounds.

if the person reasonably believes that another person is: (1) <u>Using or about to use unlawful deadly physical force</u>." (emphasis added)).

For the heat-of-passion-manslaughter instruction to be proper under this theory, the circuit court needed sufficient evidence before it to rebut the presumption of self-defense. See <u>Pressley v. State</u>, 770 So. 2d 115, 139 (Ala. Crim. App. 1999) ("A trial court has broad discretion in formulating its jury instructions, <u>provided those instructions accurately reflect the law and the facts of the case</u>." (emphasis added)), aff'd, 770 So. 2d 143 (Ala. 2000); <u>Harbin v. State</u>, 14 So. 3d 898, 908 (Ala. Crim. App. 2008) ("[A] trial court may … instruct the jury on a lesser-included offense <u>that is supported by the evidence</u>, even over the objection of one or both of the parties." (emphasis added)). The Court of Criminal Appeals' mere speculation in its unpublished memorandum that the evidence "could also be interpreted by the trier of fact as Tunstall believing that he was about to be assaulted … and [shooting] … out of a sudden heat of passion" is not evidence sufficient to overcome this statutory presumption. And no facts properly before this Court directly oppose this

7

presumption, let alone rebut it. In my opinion, Tunstall thus demonstrates a strong likelihood of conflict with <u>Pressley</u> and <u>Harbin</u>.[2]

To sum up, if Tunstall fired first, then the heat-of-passion-manslaughter instruction was improper because it was based on the presumption that Tunstall was provoked by words alone, which conflicts with <u>Mitchell</u> and <u>Fuller</u>. If Perryman fired first, then it was improper because it was unsupported by sufficient evidence to overcome the statutory presumption of self-defense, which conflicts with <u>Pressley</u> and <u>Harbin</u>. Either way, I think this Court ought to grant certiorari review.

I also believe we should grant certiorari review in this case to consider the Catch-22 in which the Court of Criminal Appeals' decision seems to put persons who use a gun in self-defense and the apparent conflict this causes with prior decisions. According to that decision, a person who is being shot at cannot return fire without committing heat-of-passion manslaughter, so long as the shooter misses them. That is, a

---

[2]The heat-of-passion-manslaughter instruction would also conflict with <u>Pressley</u> and <u>Harbin</u> if Tunstall fired first. No evidence contained in the record before this Court tends to prove that Tunstall fired first. Therefore, even if this was the theory behind the circuit court's giving the instruction, it is likewise unsupported by the evidence, and thus in conflict with <u>Pressley</u> and <u>Harbin</u>.

person can shoot back only once he has been shot because being shot at and missed is merely an "assault" that does not necessarily or presumptively support using lethal force in self-defense. I think such a result is both unreasonable and irreconcilable with the statutory presumption of self-defense in such cases under § 13A-3-23(a)(1).

For these reasons, I respectfully dissent.

Cook, J., concurs.